Leon G. KHORENIAN,
Plaintiff-Appellant,

v.

UNION OIL COMPANY OF CALIFOR-
NIA, a California corporation,
Defendant-Appellee.

No. 84–6381.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 6, 1985.

Decided May 21, 1985.

---

Elliott L. Aheroni, Encino, Cal., for plaintiff-appellant.

Robert S. Besser, Margolis, Burrill & Besser, Los Angeles, Cal., for defendant-appellee.

Before GOODWIN and REINHARDT, Circuit Judges, and SOLOMON,* District Judge.

REINHARDT, Circuit Judge:

Leon Khorenian appeals from the district court's denial of his application for a preliminary injunction under section 2805 of the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. §§ 2801–2841 (1982). We reverse.

### Facts

In October, 1970, Khorenian entered into a franchise agreement with Union Oil Company (Union Oil) to lease a service station. The parties renewed the agreement every three years; the latest renewal covers the period from November 1, 1983 through October 31, 1986. The original agreement and all of the renewal agreements require Khorenian to be present at the service station and to personally supervise the station's operation at least four hours a day, five days a week.

Khorenian suffered a heart attack in 1981. His poor health limited his physical activities and prevented him from supervising the service station on a full-time basis. His son, who had helped manage and operate the station for over ten years, took over the full-time management of the station.

Khorenian has continued to work at the service station, but the parties dispute how much time he has spent there since his heart attack. Khorenian contends that he is at the service station a few hours every day. Union Oil contends that Khorenian has consistently violated the minimum hours requirement since his heart attack. This contention is based on his absence from the service station on at least 15 different occasions when Union Oil field representatives visited the station.

Union Oil first complained of Khorenian's absence from the station in early 1983 and repeatedly warned him that his absence violated the lease agreement. When the parties renewed the lease agreement in 1983, Union Oil insisted that Khorenian promise to fulfill the personal supervision requirement. Union Oil contends that despite his promise Khorenian continued to violate the personal supervision clause after the lease was renewed. In a letter dated June 15, 1984, Union Oil terminated the lease effective September 18, 1984 because of Khorenian's failure to personally supervise the service station as required by the lease.

On September 17, 1984, Khorenian filed an action against Union Oil for both preliminary and permanent injunctive relief, or, in the alternative, damages for wrongful termination and fraudulent misrepresentation. The district court after a hearing denied Khorenian's motion for a preliminary injunction. We granted Khorenian's emergency motion for injunction pending appeal. The parties continue to operate under the franchise agreement pending the outcome of this appeal. The underlying action for a permanent injunction or damages remains to be litigated.

* The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

## Discussion

Congress enacted the Petroleum Marketing Practices Act to protect "franchisees from arbitrary or discriminatory termination or non-renewal of their franchises." S.Rep. No. 95–731, 95th Cong., 2d Sess. 15, *reprinted in* 1978 U.S.Code Cong. & Ad. News 873, 874 [hereinafter cited as Senate Report]. We have recognized that "[a]s remedial legislation, the Act must be given a liberal construction consistent with its goal of protecting franchisees." *Humboldt Oil Co. v. Exxon Co., U.S.A.*, 695 F.2d 386, 389 (9th Cir.1982) (citation omitted).

The PMPA prohibits the termination or nonrenewal of a franchise except for specifically enumerated reasons and upon the franchisor's compliance with the Act's notice requirements. Among the recognized grounds for termination is "failure by the franchisee to comply with any provision of the franchise, which provision is both reasonable and of material significance to the franchise relationship," 15 U.S.C. § 2802(b)(2)(A), and "failure by the franchisee to exert good faith efforts to carry out the provisions of the franchise" after having received written notice of such failure and having been afforded a "reasonable opportunity" to comply with the provisions in question. 15 U.S.C. § 2802(b)(2)(B). The district court found that Union Oil's notice of termination was justified pursuant to each of the foregoing provisions.[1]

The Act provides that a franchisee may bring an action to prevent termination or non-renewal if the franchisor has failed to comply with the statutory requirements. 15 U.S.C. § 2805. In particular, franchisees may obtain preliminary injunctive relief if (1) they establish that the franchise has been terminated and that "there exists sufficiently serious questions going to the merits to make such questions a fair ground for litigation," and (2) the court determines that, on balance, the hardships imposed upon the franchisor by issuance of preliminary injunctive relief are less than the hardships that would be imposed upon the franchisee in the absence of such relief. 15 U.S.C. § 2805(b)(2)(A) and (B).

The test for the issuance of a preliminary injunction under the PMPA is more liberal than that in the general run of cases. Once a franchisee establishes that he will incur the greater hardship (which should not be difficult in most PMPA cases), he need only show "a reasonable chance of success on the merits." *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1216 (7th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984); *see also Sun Refining & Marketing Co. v. Rago*, 741 F.2d 670, 672 (3d Cir.1984). Moreover, in contrast to Rule 65 of the Federal Rules of Civil Procedure, the PMPA does not require the franchisee to make a showing of irreparable harm.

Furthermore, the Act provides that once the franchisee establishes that the franchise relationship has been terminated or that it has not been renewed, the franchisor "shall bear the burden of going forward with evidence to establish as an affirmative defense that such termination or non-renewal was permitted" under one of the statutorily enumerated grounds. 15 U.S.C. § 2805(c). Reading section 2805 as a whole, a franchisee is entitled to a preliminary injunction if the balance of hardship

---

1. The district court found Union Oil's termination to be permissible under both 15 U.S.C. § 2802(b)(2)(A) and 15 U.S.C. § 2802(b)(2)(B). However, because Union Oil did not notify Khorenian that the termination was based upon § 2802(b)(2)(B), the district court erred in regarding that subsection as an independent basis for termination. Franchisors are obligated to provide franchisees with written notice of their intention to terminate the franchise; the notice must contain an explanation of the reasons for the termination. 15 U.S.C. § 2804(c). It is well established that the notice requirements of the PMPA must be strictly complied with. *See, e.g., Escobar v. Mobil Oil Corp.*, 678 F.2d 398, 400 n. 2 (2d Cir.1982); *Thompson v. Kerr-McGee Refining Corp.*, 660 F.2d 1380, 1390 (10th Cir.1981), *cert. denied*, 455 U.S. 1019, 102 S.Ct. 1716, 72 L.Ed.2d 137 (1982); *Mobil Oil Corp. v. Clark*, 652 F.2d 2, 3 (8th Cir.1981). Moreover, Union Oil has not argued on appeal that § 2802(b)(2)(B) provides an independent basis on which we may affirm its decision to terminate Khorenian's franchise agreement.

tips in his favor and there is a "reasonable chance" that the franchisor will be unable to prove that the termination was permissible under the Act. In short, in order to rebut the franchisor's showing, the franchisee need show only the existence of "sufficiently serious questions" as to the propriety of the termination under the Act to present a "fair ground" for litigation.

Here, Union Oil concedes that termination will cause Khorenian the greater hardship. The only issue, therefore, is whether there exists a sufficiently serious question that presents a fair ground for litigation. The district court concluded that the personal supervision requirement in the lease was both reasonable and of material significance to the franchise relationship under 15 U.S.C. § 2802(b)(2)(A) and that Khorenian's arguments to the contrary failed to present a sufficiently serious question. These are conclusions of law which we review *de novo*.

Khorenian contends that the personal supervision clause is not "reasonable and of material significance" to the franchise relationship. We have yet to address the meaning of this statutory phrase. However, Congress made clear its intent that although franchisors are "entitled to reasonable expectations of compliance by the franchisee with the provisions of the franchise agreement," the "extreme remedy" of termination ought not be resorted to for "technical or minor violations of the contract." Senate Report at 18; U.S.Code Cong. & Ad.News at 876; *see also Sun Refining & Marketing Co. v. Rago*, 741 F.2d at 673. Congress recognized that termination is appropriate only for those contractual violations that are "so serious as to undermine the entire relationship." Senate Report at 18; U.S.Code Cong. & Ad. News at 876. In our view Congress intended to restrict termination to contractual violations of the most serious and fundamental nature.

In making determinations in franchise termination cases under the PMPA, we look not only at the nature of the provision allegedly violated, but also at the nature and effect of the alleged breach. Whether a breach of a personal supervision requirement is so fundamental that it undermines the franchise relationship may well depend on the facts of the particular case. Here, it appears, on the basis of the present record, that Union Oil insisted on compliance with the provision as a condition of renewal of the lease. On the other hand, the record also reveals that the station was being managed by Khorenian's son, who had helped to manage and operate the station, apparently successfully, for over ten years. Union Oil presented evidence that Khorenian's gasoline purchases from Union Oil declined in recent years, but other evidence in the record suggests that this reduction simply reflected an industry-wide drop in gasoline sales. The district court made no finding on the effect of Khorenian's reduced personal supervision. We believe that all of the relevant factors should be explored fully at trial before any final determination is made as to whether there was a contractual violation that undermined the franchise relationship. In any event, whether or not Khorenian's breach of the personal supervision provision meets that test is clearly a serious question that presents a fair ground for litigation.

The district court's denial of an injunction pending trial conflicts with both the letter and the spirit of the PMPA. The order denying an injunction is reversed, and the district court is directed to grant a preliminary injunction.

REVERSED AND REMANDED.