820 F.2d 280
 ATLANTIC RICHFIELD COMPANY, a Delaware Corporation, Plaintiff-Appellee,
v.
Mani GUERAMI; Apadona Corporation, a California
Corporation; Sabek, Inc., a California
Corporation; Andy Saberi; and Arman
Bezjian, Defendants-Appellants.
SABEK, INC., a California Corporation; and Apadona
Corporation, a California Corporation, Plaintiffs-Appellants,
v.
ATLANTIC RICHFIELD CORPORATION, a Delaware Corporation; and
Arco Petroleum Products Company, Defendants-Appellees.
 No. 86-1523.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 11, 1986.
Memorandum Filed May 1, 1987.
Order Filed June 23, 1987.
 
 David Jay Morgan, San Mateo, Cal., for defendants-appellants.
 Douglas W. Beck, Los Angeles, Cal., for plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before KENNEDY, TANG and THOMPSON, Circuit Judges.
 KENNEDY, Circuit Judge:
 
 
 1
 Appellants Mani Guerami, Apadona Corporation (Apadona), Sabek, Incorporated (Sabek), Andy Saberi, and Arman Bezjian appeal the district court's grant of summary judgment in favor of Atlantic Richfield Corporation (Arco) in Civil No. 85-4838 (N.D.Cal. Dec. 20, 1985). Apadona and Sabek also appeal the grant of summary judgment against them in Civil No. 85-4848 (N.D.Cal. Dec. 20, 1985). We affirm the district court's decision granting summary judgment in favor of Arco as to Arco's termination of the franchise at 504 Whipple Avenue, Redwood City, California. We vacate and remand the district court's grant of summary judgment as to the damages claim of Apadona and Sabek in No. 86-4848.
 
 
 2
 We review the district court's grant of summary judgment de novo. Bower v. Bunker Hill Co., 725 F.2d 1221, 1223 (9th Cir.1984). The district court found three independent bases for its conclusion that Arco did not violate the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. Secs. 2801-2841, in terminating the franchise. We agree with the district court that any one of the grounds for termination cited by Texaco was sufficient and that no triable issue of fact existed as to any of them. There is no genuine issue of material fact on which to challenge any one of ARCO's grounds for termination.
 
 
 3
 Under the PMPA, a "franchisee" is a person who is authorized to use a trademark under a franchise, and a "franchise" is a contract conferring such authorization. 15 U.S.C. Sec. 2801(1), (4). The parties agree that Arco's only signed agreement was with Guerami personally, and that this agreement is the franchise at issue in this case. Thus Guerami was the franchisee by virtue of his contract with Arco.
 
 
 4
 The PMPA also states that a franchisee's conviction of "any felony involving moral turpitude" constitutes an event that will permit the franchisor to terminate the franchise. 15 U.S.C. Secs. 2802(b)(2)(C), (c)(12). Guerami was convicted of possession of heroin for sale, a crime of moral turpitude. See, e.g., United States ex rel. DeLuca v. O'Rourke, 213 F.2d 759, 762 (8th Cir.1954). Because appellants do not argue that Arco acquired knowledge of Guerami's conviction more than one hundred and twenty days before giving its notice of termination, or that the conviction did not occur during the period the franchise was in effect, there is no issue of fact as to whether the notice requirements of 15 U.S.C. Sec. 2802(b)(2)(C) were met.
 
 
 5
 We reject appellants' argument that Guerami's assignment of the franchise to Apadona rendered Apadona, and not Guerami, the "franchisee" for the purposes of the PMPA. Accepting appellants' evidence as true, Arco's permission of the assignment to Apadona was based on its acknowledgment of Guerami's legal right under California law to make such an assignment. But under California law, Guerami only had the legal right to assign the franchise to Apadona if he offered in writing to personally guarantee Apadona's performance of its obligations under the franchise. Cal.Bus. & Prof.Code Sec. 21149. Although appellants submitted evidence that an attorney offered to obtain Guerami's guarantee, they concede that the attorney did not represent Guerami, that he did not obtain Guerami's guarantee, and that Guerami himself never made the required written offer. There is no evidence to suggest that Arco was willing to consent to any transfer to Apadona without such a guarantee from Guerami. Under these circumstances, Guerami's transfer to Apadona did not bind Arco, and Arco was still entitled to look to Guerami as the person bound by the franchise agreement, i.e. Guerami was its franchisee.
 
 
 6
 Even if we agreed that Apadona was the nominal "franchisee," Arco's termination of the franchise would still have been proper. In Humboldt Oil Co. v. Exxon Co, U.S.A., 695 F.2d 386 (9th Cir.1982), this court affirmed the district court's holding that a franchise held by a corporation may be terminated under the PMPA when its sole shareholder is convicted of a crime involving moral turpitude. We stated that "[g]ood faith belief of the franchisor that the franchisee is untrustworthy or engages in fraudulent practices undermines the entire franchise relationship. Conviction in the trial court provides a reasonable basis for such a belief." Id. at 389. Because Saberi's option to buy Guerami's shares was never exercised, Guerami was Apadona's sole shareholder at all relevant times. He remained Apadona's president even after he went to prison. Arco had no recourse against any individual other than Guerami if problems developed with Apadona. Thus, Guerami's conviction undermined the franchise relationship regardless of whether he or Apadona was the nominal "franchisee."
 
 
 7
 We also reject appellants' argument that Guerami was no longer the "franchisee" for the purposes of the PMPA because Arco had consented to, or was estopped from objecting to, Guerami's replacement by Saberi and Sabek. Although Guerami testified at his deposition that he notified Arco officials that he would like Saberi to run the station, appellants' brief concedes that any permission granted by Arco was conditioned on Guerami's maintaining ownership of the franchise. Even were we to accept some kind of consent on the part of Arco to the transfer of management responsibility from Guerami to Saberi and Sabek, and we express no opinion on this point, appellants fail to raise any issue of fact as to Arco's consent to the transfer of the franchise itself to Saberi or Sabek.
 
 
 8
 Finally, we reject appellants' contention that Khorenian v. Union Oil Co. of California, 761 F.2d 533, 536 (9th Cir.1985), requires a trial to determine whether the franchise relationship was undermined as a result of Guerami's conviction. In Khorenian the court held that the nature and effect of an alleged contractual breach are relevant to whether or not a franchise may be terminated under the PMPA and remanded the case for factfinding on that issue. Id. In Khorenian, however, the court was addressing a termination effected under 15 U.S.C. Sec. 2802(b)(2)(A), the provision governing termination for violation of the franchise contract. That section permits termination only when the provision violated is "of material significance" to the franchise relationship. Thus, the standards set out by the Khorenian court govern only in cases where the court must decide whether a contractual violation is serious enough to warrant the termination of a franchise.
 
 
 9
 In this case, we must assess whether the termination was proper under 15 U.S.C. Sec. 2802(b)(2)(C), which permits termination based upon "the occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise is reasonable." Congress has provided explicit guidance as to the meaning of this provision by listing in a separate section the types of events that meet this test, including "conviction of the franchisee of any felony involving moral turpitude." 15 U.S.C. Sec. 2802(c)(12). Thus, unlike the court in Khorenian, we are not called upon to determine whether a violation was serious enough to warrant termination. Congress has made that decision already in specifying events as to which termination is proper, among which is a conviction of the type sustained by Guerami. See Humboldt Oil, 695 F.2d at 389 ("Congressional intent could not be clearer").
 
 
 10
 Our disposition of this issue renders it unnecessary to consider whether termination of the franchise was justified by any of the other grounds asserted by the district court.
 
 
 11
 We reverse and remand the district court's grant of summary judgment as to the claim for alleged overpayments in No. 85-4848. Although Sabek and Apadona framed their lawsuit in terms of the PMPA, their claim for damages as a result of overpayments made to Arco is nevertheless evident from a liberal reading of the complaint. See Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (Federal Rules of Civil Procedure favor liberal construction of pleadings); Bouse v. Bussey, 573 F.2d 548, 551 (9th Cir.1977) (per curiam) (same). In their complaint, Apadona and Sabek allege that they made overpayments of about $16,000 to Arco, and that Arco refused to make an accounting. Arco's answer admits that Arco refused to make an accounting, and otherwise denies that any money was owed. Affidavits submitted on both sides raise genuine issues of material fact as to whether Arco received any overpayments and to whom it may owe reimbursement. On remand, the district court should determine whether there is a federal basis for these "damage claims," and if not, whether it should nevertheless decide them under pendent jurisdiction or diversity jurisdiction. See Bsales v. Texaco, Inc., 516 F.Supp. 655, 662 n. 6 (D.N.J.1981). It should then accept further proof on whether and to whom Arco owes money for the alleged overpayments.
 
 
 12
 Our decision to vacate and remand as to this narrow issue does not affect the district court's decision in favor of Arco under the PMPA or its denial of a stay of execution. Arco may be liable to one or more appellants for overpayments even though it is rightfully in possession of the service station.