Evelyn L. **BARNES,** t/a Triangle Gulf, Plaintiff-Appellant,

v.

**GULF OIL CORPORATION;** Anderson Oil Company; Vernon H. Anderson; Betty W. Anderson, Defendants-Appellees,

**Service Station Dealers of America, Inc., Amicus Curiae.**

No. 86–2137.

United States Court of Appeals, Fourth Circuit.

Argued March 6, 1987.

Decided July 28, 1987.

Richard McPhail Bing (Ronald M. Pearce, Pearce & Bing, Richmond, Va., on brief), for plaintiff-appellant.

Dimitri Daskal, for amicus curiae Service Station Dealers of America, Inc.

Randall S. Henderson, Robert S. Bassman (Douglas B. Mitchell, Bassman, Mitchell & Alfano, Washington, D.C., Waller T. Dudley, Boothe, Pritchard & Dudley, Alexandria, Va., on brief), for defendants-appellees.

Before WINTER, Chief Judge, PHILLIPS, Circuit Judge, and YOUNG, United States District Judge for the District of Maryland, at Baltimore.

HARRISON L. WINTER, Chief Judge:

In a previous appeal, we reversed the dismissal of the complaint of Evelyn Barnes, t/a Triangle Gulf, against Gulf Oil Corporation (Gulf), Anderson Oil Company, Inc. (Anderson Oil), Vernon H. Anderson and Betty W. Anderson, ruling that it alleged a cause of action under the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. §§ 2801 *et seq. Barnes v. Gulf Oil Corporation*, 795 F.2d 358 (4 Cir.1986) (*Barnes I*). We remanded the case for further proceedings. On remand, Barnes moved for a preliminary injunction to prevent Gulf from terminating or declining to renew her franchise. The district court denied relief and Barnes appeals.

Because we conclude both that the district court improperly applied the requirements of PMPA in denying interim injunctive relief and that Barnes is entitled to a preliminary injunction, we again reverse. We remand the case with instructions to grant a preliminary injunction and to conduct further proceedings as described herein.

I.

The facts alleged by plaintiff are set forth more fully in our prior opinion. For present purposes we note only that Evelyn Barnes began operating the Triangle Gulf service station in September 1979, pursuant to franchise and lease agreements with Gulf Oil Corp. Her assumption of operational duties followed the death of her husband who, prior to 1979, had been a Gulf dealer for seven years. On May 6, 1985, Gulf assigned its interest in the franchise to Anderson Oil. At the same time, Gulf sold the service station premises to Vernon and Betty Anderson, subject to Barnes' right of occupancy as provided in the franchise agreement. Both of these transactions occurred without notice to Barnes, and without providing her with the opportunity to acquire these interests herself.

Barnes filed suit, alleging that Gulf's assignment was an unjustifiable termination of the franchise, in violation of PMPA. The "termination" resulted, according to Barnes, because of the increased cost of gasoline that accompanied the change in supplier. In the alternative, Barnes argued that the assignment was invalid under state law, thus constituting a constructive termination of the franchise. Barnes also claimed that Gulf's failure to give her notice and to afford her an opportunity to purchase the premises violated §§ 2802(b)(3)(D) and 2804 of PMPA.

The district court granted defendants' motions to dismiss, ruling that the assignment and sale did not terminate the franchise, and that the assignment was not invalid. Both the franchise and lease agreements that Barnes had made with Gulf expired in August 1985. By letter dated November 11, 1985, Anderson Oil notified Barnes that, due to the parties' failure to reach agreement on certain modifications to the franchise relationship as it had existed between Barnes and Gulf Oil, Barnes' franchise would be nonrenewed effective February 17, 1986. The district court entered an injunction pending appeal, which restrained Anderson Oil's ability to act upon the notice of nonrenewal. The injunction expired, by its terms, upon entry of our order vacating the district court's dismissal of Barnes' complaint.

In *Barnes I*, reversing the dismissal of Barnes' complaint, we ruled that the assignment of a franchise that increases a retailer's gasoline cost over the stipulated franchise price furnishes a cause of action against the refiner under PMPA. 795 F.2d at 358, 359. We also ruled that if Barnes could prove at trial that the assignment violated state law, this too would constitute an unjustified termination of the franchise. *Id.* at 363–64.

On remand to the district court, Barnes moved for a preliminary injunction under § 2805(b)(2). That section states:

(2) Except as provided in paragraph (3), in any action under subsection (a) of this section, the court shall grant a preliminary injunction if—

(A) the franchisee shows—

(i) the franchise of which he is a party has been terminated or the franchise relationship of which he is a party has not been renewed, and

(ii) there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and

(B) the court determines that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted.

For purposes of the ruling on the motion for preliminary injunction, defendants have conceded that the first two statutory requirements are satisfied. They thus concede both the existence of a termination and the existence of serious questions giving rise to a fair ground for litigation. They contest only plaintiff's claim that the balance of hardships is in plaintiff's favor.

The district court denied the injunction after balancing the Andersons' hardships against those of Barnes:

There is no greater hardship on Mrs. Barnes than on the Andersons. Indeed, I am inclined to think that the Andersons are undergoing a greater hardship than Mrs. Barnes; certainly Mrs. Barnes is undergoing no hardship that cannot be readily remedied in damages.

## II.

As a preliminary matter, we note that the district court frequently referred to the burden on the "Andersons" in assessing the balance of hardships attending the grant or denial of an injunction. It is difficult to tell whether this reflects merely an imprecision in language or a belief that the Andersons, individually, could properly claim franchisor status. In either case, some clarification is in order. Although it is conceivable that Anderson Oil, as assignee of Gulf's franchise agreement with Barnes, could claim to qualify as a franchisor under the terms of PMPA—a claim which we ultimately reject, see *infra*—we see no basis on which Vernon and Betty Anderson may make a similar claim. The Andersons, individually, purchased from Gulf the premises on which the service station was located. They did not, however, obtain any interest in the franchise agreement with Barnes. Absent such an interest, they can make no claim to franchisor status under the Act. See 15 U.S.C. § 2801. Accordingly, we treat the district court decision as if it had properly factored into its balancing only the hardships that Anderson Oil would face in the event an injunction were granted.[1]

In order to balance the relative hardships of franchisor and franchisee, as required by § 2805(b)(2)(B), the "franchisor" must first be identified. Although the district court assumed that Anderson Oil was the franchisor, we think that that assumption is incorrect.

The statute, 15 U.S.C. § 2801(3), defines "franchisor" as a "refiner or distributor ... who authorizes or permits, under a franchise, a retailer or distributor to use a

---

**1.** We note also, especially with regard to their argument relating to the relative hardships on the parties should an injunction be granted or denied, defendants lump together the prospective monetary losses of Anderson Oil and the Andersons individually. This aggregation is impermissible. For reasons of their own, defendants split ownership of the premises and ownership of the franchise in effecting the transfer from Gulf Oil. The Andersons, individually, took title to the premises, and Anderson Oil was the assignee of the Gulf Oil franchise. Having elected to separate the attributes of the service station operation by separating them between two individuals, on the one hand, and a corporation, on the other hand, defendants must respect the identity of the different entities. Although the Andersons, individually, are undoubtedly the principal or sole owners of Anderson Oil, there is no justification in this record for piercing Anderson Oil's corporate veil.

trademark in connection with the sale, consignment, or distribution of motor fuel." Section 2801(1)(B)(iii) defines "franchise" to include "the unexpired portion of any franchise ... which is transferred or assigned as authorized by the provisions of such franchise or by any applicable provision of State law...."

On its face, the assignment of Gulf's franchise interest to Anderson Oil appears to fall within these provisions and qualify Anderson Oil as a franchisor. However, Barnes argues that the assignment violated Virginia law, and we have previously held that "an assignment that is unauthorized by state law is prohibited and that the unexpired portion of a franchise that has been invalidly assigned is no longer a franchise as defined by the Act." *Barnes I,* 795 F.2d at 363. Thus, if Barnes can prove a violation of state law, the assignment to Anderson Oil was void and never provided Anderson Oil with any interest in the franchise. Similarly, proof that Barnes' franchise with Gulf was unjustifiably, and thus invalidly, terminated would also deprive Anderson Oil of its claim to legitimate franchisor status.

■ The essence of this lawsuit is Barnes' claim that Gulf illegally terminated its franchise agreement with Barnes by improperly assigning its interest to Anderson Oil. The manifest purpose of the litigation is to avoid the need to deal with Anderson Oil, a party with whom Barnes has no consensual relationship. When it is conceded that the validity of the assignment presents a serious question, it would be anomalous, and contrary to the purpose and spirit of PMPA, to allow Gulf to extricate itself from this lawsuit by resorting to the very procedural maneuver—the assignment—whose validity is challenged in the suit. It would, in effect, presuppose resolution of the ultimate issue in the case, and create a major loophole in PMPA. We do

not believe that Congress has sanctioned such a result, nor will we.[2]

*Barnes I* readily and unambiguously concluded that only Gulf was the franchisor for purposes of interpreting and applying the Act. This is clear from the language of that opinion:

> [W]e conclude that Barnes's remedy is not confined to an action against Anderson. We agree with *Hodge* [*Hodge v. Texaco, Inc.,* No. 81–228–RE (D.Ore. June 4, 1982) (unpublished)] that the Act affords a remedy against the franchisor.... The Act does not contemplate that a franchisee should be relegated to seeking damages from an assignee that might not have the resources to satisfy a judgment. A franchisor cannot circumvent the protections the Act affords a franchisee by the simple expedient of assigning the franchisor's obligation to an assignee who increases the franchisee's burden by charging more for gasoline than the stipulated franchise price.

795 F.2d at 362.

To conclude that Anderson is the franchisor would gravely threaten the viability of PMPA. Such a ruling would theoretically permit large refiners and distributors like Gulf effectively to terminate their relationship with small retailers like Barnes simply by assigning the remainder of a franchise term to another small company. In that situation, a preliminary injunction would be less likely to issue since the balance of hardships would be much closer. Yet the franchisee may be unable to survive a prolonged discovery period or trial on the merits without an injunction. Gulf or any other large producer might thus be able to rid itself of unwanted franchisees without technically "terminating" them so as to trigger PMPA's procedural protections.[3] Such a result runs directly counter

---

**2.** Although the Eighth Circuit, in an unpublished opinion, has cryptically referred to the anticipated hardships on both the original franchisor and the assignee in granting a plaintiff's preliminary injunction motion, there is no indication that the validity of so doing was an issue on appeal, nor does it furnish any justification

for this approach. See *Felts v. Amoco Oil Co.,* 786 F.2d 1169 (8 Cir.1986).

**3.** At this stage of the law suit, to lend legitimacy to the assignment from Gulf to Anderson Oil may open the door to other means for circumventing the protections of PMPA. It is significant that Gulf's franchise was assigned to

to PMPA's purpose of providing "protection for franchisees from arbitrary or discriminatory termination or non-renewal.... [which] threatens the independence of the franchisee as a competitive influence in the marketplace." S.Rep. No. 95–731, 1978 U.S.Code Cong. & Ad.News 873, 874, 877. *See also Continental Enterprises, Inc. v. American Oil Co.,* 808 F.2d 24 (8 Cir.1986); *Barnes I,* 795 F.2d at 360; *Tobias v. Shell Oil Co.,* 782 F.2d 1172, 1174 (4 Cir.1986).

■■■ Defendants argue that by joining Anderson Oil and the Andersons as parties defendant and praying that they be included within the scope of the injunction sought, Barnes is estopped from denying the need to account for the hardships that Anderson Oil and the Andersons will suffer from such an injunction. We are not persuaded. Faced with a fait accompli—the allegedly invalid assignment—Barnes could hardly ignore Anderson Oil or the Andersons in seeking a return to her pre-assignment status. To use this recognition of reality against Barnes would improperly accord weight and legitimacy to the assignment that is the focus of the litigation. Moreover, such a recognition does not necessitate a calculation of the hardships to Anderson Oil and the Andersons, for they have voluntarily placed themselves into a situation in which they may be disadvantaged by resolution of the litigation. Every distributor, dealer, jobber, etc. can be held to have knowledge of the operation of PMPA. Thus Anderson Oil, in the eyes of the law, accepted the assignment from Gulf with the accompanying risk that the assignment would be challenged and invalidated. Anderson Oil's protection lies in its opportunity to arrange contractually with Gulf for an allocation of those risks, or, in the absence of such foresight, in an action against Gulf should the assignment be held invalid. Congress was certainly aware that one method for terminating a franchise

was through assignment. Since Congress made no provision, in its enforcement scheme, for accommodation of the hardships to an assignee, we can only conclude that it intended that such hardships not be considered. This view comports with an understanding of PMPA's principal concern: protection of franchisees. *See Khorenian v. Union Oil Co. of California,* 761 F.2d 533, 535 (9 Cir.1985) (" '[a]s remedial legislation, the Act must be given a liberal construction consistent with its goal of protecting franchisees' " (citations omitted)).

Accordingly, the district court erred in weighing the hardships to Anderson Oil if an injunction is granted against those to Barnes if an injunction is denied. Since there is no question that the hardships to Barnes far exceed any that Gulf would suffer, a preliminary injunction should have been granted, subject only to a determination of a bond as hereafter discussed.

### III.

■ Even if Anderson Oil were held to constitute a "franchisor," such that the hardships to it were a proper consideration, we think that the balance clearly favors Barnes so that we conclude that the district court abused its discretion in denying interim injunctive relief. Because proper assessment of the relevant factors will be critical in future cases, we discuss them briefly.

Section 2805(b)(2)(B) calls for an "on balance" assessment of the hardships imposed upon the franchisor if a preliminary injunction is granted, and upon the franchisee if a preliminary injunction is denied. The legislative history makes clear that "[t]he balancing of hardship standard is a relative standard which is utilized ... to permit consideration [of] ... the comparative inju-

---

Anderson Oil, while the service station itself was sold to the Andersons as individuals. In these circumstances, the Andersons could lease the station premises to Anderson Oil, which in turn could lease it to Barnes. If Barnes were notified in advance of the duration of the underlying lease between Anderson Oil and the Andersons, expiration of that lease could theo-

retically be used to trigger one of the legitimate bases for nonrenewal under PMPA. *See* 15 U.S.C. § 2802(c)(4). We express no opinion on the legality of such a scheme, but merely note it as a potential threat to PMPA protections that might be available under the interpretation of the PMPA urged by defendants here.

ry which each party would suffer by reason of the grant or denial of preliminary injunctive relief." S.Rep. No. 95–731, 1978 U.S.Code Cong. & Admin.News at 899.

The district court apparently failed to make such an assessment of relative hardships. Its opinion contains only the conclusory statement that "[t]here is no greater hardship on Mrs. Barnes.... Indeed, I am inclined to think that the Andersons are undergoing a greater hardship than Mrs. Barnes...." We perceive no evidence in the record to support this conclusion. Nor is there any indication that the district court considered the relative ability of each party to accommodate the economic losses which it described.[4] The evidence shows that Barnes must pay to Anderson Oil an increased gasoline price, requiring Barnes to increase her price to motorists and impairing her ability to compete with other stations. It shows also that, with Gulf's permission, Barnes offers car and truck rental service and that the revenues therefrom account for roughly half her total income. Anderson Oil plans to require that these services be discontinued. The evidence of hardship to Anderson Oil is that it would lose revenue from sales of gasoline and automotive accessories to Barnes. While the service station is the sole source of income for Barnes, Anderson Oil is apparently a full-line jobber which supplies approximately forty retail outlets with its various products. Of those forty outlets, Anderson Oil operates six of them itself and leases another six to other dealers. Barnes seems amply justified in arguing that, "given its significant resources and assets, [Anderson Oil] is far more able to forego the lost revenue and remain profitable than is plaintiff." Precisely this type of analysis has been used by other courts to justify injunctions in similar situations.

*See, e.g., Lasko v. Consumers Petroleum of Conn., Inc.,* 547 F.Supp. 211, 222 (D.Conn.1981) (granting preliminary injunction where franchisee's sole source of income is service station franchise, while franchisor is large corporation for whom station is a "relatively minor source of income"); *Daniels v. Dilmar Oil Co.,* 502 F.Supp. 178, 181 (D.S.C.1980) (granting preliminary injunction where franchisee would lose only source of income and risk bankruptcy, whereas franchisor would suffer minimal effects and continue to receive rent and profits from goods sold by franchisee). Although Barnes may not be immediately threatened with a complete loss of income, there is nothing to guarantee that Anderson Oil will continue with the current arrangements pending a trial on the merits; the district court simply assumed that Anderson Oil's conduct to date would persist. In any case, there is little doubt that Barnes is significantly less capable of withstanding the loss than is Anderson Oil.

■ Defendants complain that such a comparison would make the granting of an injunction under PMPA virtually inevitable, since the franchisee is almost always the small retailer. This is undoubtedly true, but it is not an argument against the result sought by Barnes. PMPA, as noted above, was *designed* to benefit the small retailer and its standard for preliminary injunctions was intentionally drawn to facilitate the grant of injunctive relief. *See also Khorenian,* 761 F.2d at 535 (preliminary injunction test has been relaxed under PMPA); *Greco v. Mobile Oil Corp.,* 597 F.Supp. 468, 473 (N.D.Ill.1984) (balance invariably weighs heavily in franchisee's favor); *Mobil Oil Corp. v. Vachon,* 580 F.Supp. 153, 156 (D.Mass.1983) (balance of hardship test favors franchisee).

---

**4.** *Barnes I* held that "[a]part from the alleged increase in the cost of gasoline, the allegations about the detrimental changes imposed by Anderson and the loss of Gulf's marketing services cannot be the basis of any *monetary recovery* under the Act," because they are not actually a part of the franchise agreement. 795 F.2d at 364 (emphasis added). However, there is nothing in that opinion, or in the statute itself, that precludes consideration of such factors in making an assessment of the relative hardships related to an injunction.

Indeed, the broad language of both § 2805(b)(2)(B) and the legislative history, *supra,* suggest that all factors which contribute to the ultimate hardships may properly be considered.

Such an interpretation certainly comports with the statutory purpose of aiding franchisees and facilitating injunctions.

Finally we comment on another factor that the district court took into consideration. The district court considered it significant that any hardship suffered by Barnes as a result of the denial of a preliminary injunction could be "readily remedied in damages." This consideration apparently derives from the requirement of traditional preliminary injunction analysis that the proponent prove "irreparable harm"—a requirement *omitted* from PMPA in its effort to ease the burden of proof on franchisees seeking injunctive relief. *See Khorenian,* 761 F.2d at 535; *Vachon,* 580 F.Supp. at 156; *Daniels,* 502 F.Supp. at 181. We think that this factor should not have been considered.

## IV.

PMPA, 15 U.S.C. § 2805(b)(3) provides that a court is not prohibited, in granting equitable relief, from requiring a franchisee to post a bond. The decision whether to require a bond, as well as its amount, is discretionary.

Although Barnes argues that her continuing payments for rent and fuel render a bond unnecessary, defendants note that these payments are far below the money that may ultimately be their due, and which may be otherwise uncollectible. There is, at present, little basis in the record for assessing the need for a bond in this case. On remand the district court, in granting the preliminary injunction that we direct, should make an appropriate factual inquiry to permit it to exercise its discretion as to whether to require a bond and, if so, to fix the amount.

REVERSED AND REMANDED.