Mark E. ALEXANDER, Plaintiff,

v.

EXXON COMPANY, U.S.A., Defendant.

No. 6:95CV882.

United States District Court,
M.D. North Carolina,
Winston–Salem Division.

Feb. 15, 1996.

**1250**

Fred Robinson Harwell, Jr., Davis & Harwell, P.A., Winston–Salem, NC, for plaintiff.

A. Todd Brown, Hunton & Williams, Raleigh, NC, for defendant.

## MEMORANDUM OPINION

OSTEEN, District Judge.

This matter comes before the court on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. Defendant has also filed a Motion for Preliminary Injunction.

For the reasons stated herein, Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction will be denied. Defendant's Motion for Preliminary Injunction will also be denied.

## I. FACTS

Plaintiff Mark E. Alexander owns and manages an Exxon service station in Clemmons, North Carolina.[1] Plaintiff has operated the Exxon franchise since November 1991.[2] The income derived from the franchise is Plaintiff's sole source of income.

On June 22, 1995, Plaintiff entered a plea of guilty in the United States District Court for the Middle District of North Carolina to a felony charge of conspiracy to distribute cocaine under 21 U.S.C. §§ 846 and 841(a)(1).[3]

Plaintiff was sentenced to: (1) imprisonment for twenty-three months; (2) five years supervised release; (3) a $5,000 fine; and (4) a $50 special assessment. Plaintiff was incarcerated on the same day.

Plaintiff's franchise agreement with Defendant Exxon Company, U.S.A. ("Exxon") was scheduled to expire on December 1, 1995. On October 23, 1995, Defendant sent written notice to Plaintiff of its election to "terminate and nonrenew, effective 12 o'clock noon December 1, 1995, [its] contracts and the franchise and franchise relationship, as defined in the Petroleum Marketing Practices Act" ("PMPA") with Plaintiff. (Pl.'s Br. in Supp. of Pl.'s Mot. for T.R.O. and Prelim.Inj. at 2.) According to the notice, termination and nonrenewal was based solely upon Plaintiff's conviction of "drug-related offenses [sic] pursuant to 21 U.S.C. §§ 841(a)(1) [and] 846." (Pl's Br. in Supp. of Pl.'s Mot. for T.R.O. and Prelim.Inj. at 3.)

On November 10, 1995, Defendant notified Plaintiff that Defendant had elected to extend the effective termination and nonrenewal date of the franchise to February 15, 1996.

On December 19, 1995, Plaintiff filed this action alleging that Defendant had intentionally breached its obligations to Plaintiff under the franchise contracts and the PMPA. Plaintiff also alleges that Defendant intentionally and/or negligently breached its fiduciary duty to Plaintiff and its duty to act in good faith.

Plaintiff seeks equitable relief in the form of a temporary restraining order, a preliminary injunction, and a permanent injunction to prevent Defendant from: (1) terminating the franchise on any grounds heretofore asserted or assertable; (2) taking any action that might change the circumstances of the

---

**1.** The service station is located at 2420 Lewisville Road in Clemmons.

**2.** Plaintiff is a "franchisee" of Defendant as defined in 15 U.S.C. § 2801(4). Defendant is a "franchisor" as defined in 15 U.S.C. § 2801(3). A "franchise relationship" exists between Plaintiff and Defendant as defined in 15 U.S.C. § 2801(2).

**3.** The charges brought against Plaintiff were the result of an ongoing federal drug investigation.

"Although Plaintiff entered his plea in 1995, the [actions that resulted in] his plea occurred during the period from 1989 until 1990 or 1991, prior to the inception of the franchise relationship." (Pl.'s Br. in Supp. of Pl.'s Mot. for T.R.O. and Prelim.Inj. at 13.) Plaintiff was contacted by federal law enforcement officials in 1992 and had been interviewed in connection with the drug investigation. (Sherrie Billings Aff. at 5; William E. Alexander Aff. at 5.)

franchise relationship in any way adverse to Plaintiff; or (3) taking any action to terminate or nonrenew the franchise relationship with Plaintiff. Plaintiff also seeks actual and exemplary damages, attorneys' fees, and witness fees pursuant to 15 U.S.C. § 2805. Alternatively, Plaintiff prays for an award of past, present, and future damages in an amount not less than $200,000.

## II. DISCUSSION

### A. Purpose of the Petroleum Marketing Practices Act

 The PMPA was enacted to establish "protection for franchisees from arbitrary or discriminatory termination or nonrenewal of their franchises." S.Rep. No. 95–731, 95th Cong., 2d Sess. 15, *reprinted in* 1978 U.S.C.C.A.N. 873, 874. The legislative history shows Congress' recognition of, and attempt to remedy, the vast disparity in the bargaining position between the often powerful franchisor-refiner and the lone franchisee-dealer. *Id.* at 878; *Bellmore v. Mobil Oil Corp.*, 783 F.2d 300, 304 (2d Cir.1986) ("[t]he gist of it is that Congress was much concerned with the coercive relationship between the franchisor and franchisee. ..."); *Brach v. Amoco Oil Co.*, 677 F.2d 1213, 1216 (7th Cir.1982); *Munno v. Amoco Oil Co.*, 488 F.Supp. 1114, 1118 (D.Conn.1980) ("franchise relationship frequently amounted to a contract of adhesion unilaterally imposed on reluctant dealers by an all-powerful distributor"). Therefore, the PMPA is to be liberally construed consistent with the goal of protecting franchisees. *Hilo v. Exxon Corp.*, 997 F.2d 641, 643 (9th Cir.1993).

### B. Standard for a Preliminary Injunction under the Petroleum Marketing Practices Act

 In reviewing a request for a preliminary injunction under the PMPA, the court shall grant an injunction against a franchisor if: (1) the franchise has been terminated or has not been renewed; (2) there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and (3) the hardship imposed upon the franchisor by the issuance of a preliminary injunction will be less than the hardship imposed upon the franchisee if such preliminary injunctive relief were not granted. *See* 15 U.S.C. § 2805(b)(2); *Black v. Exxon Co., U.S.A.*, 746 F.Supp. 615 (D.S.C.1990).

 Because the PMPA was designed to benefit the small retailer, the standard for preliminary injunctions was intentionally drawn to facilitate the grant of injunctive relief. *Barnes v. Gulf Oil Corp.*, 824 F.2d 300, 306 (4th Cir.1987); *see also Khorenian v. Union Oil Co. of Cal.*, 761 F.2d 533, 535 (9th Cir.1985) (preliminary injunction test has been relaxed under PMPA); *Greco v. Mobil Oil Corp.*, 597 F.Supp. 468, 473 (N.D.Ill.1984) (balance invariably weighs heavily in franchisee's favor); *Mobil Oil Corp. v. Vachon*, 580 F.Supp. 153, 156 (D.Mass.1983) (balance of hardship test favors franchisee). Prior to deciding whether Plaintiff satisfies the elements for a preliminary injunction, the court must first examine the requirements for termination and nonrenewal of a franchise under the PMPA.

### C. Termination and Nonrenewal of a Franchise under the Petroleum Marketing Practices Act

 Under the PMPA, termination or nonrenewal of a franchise agreement is not entirely forbidden.

> In fact, the grounds for termination or nonrenewal provided in [s]ection 2802 are wide ranging. Rather, the PMPA seeks to make termination and nonrenewal less arbitrary and allow time in which to act to preserve the franchise by imposing certain notice and time requirements on termination or nonrenewal.

*California Petroleum Distrib., Inc. v. Chevron, U.S.A., Inc.*, 589 F.Supp. 282, 285 (E.D.N.Y.1984). Specifically, the statute provides in relevant part:

> (a) Prior to termination of any franchise or nonrenewal of any franchise relationship, the franchisor shall furnish notification of such termination or such nonrenewal to the franchisee who is a party to such franchise or such franchise relationship—
>
> > (1) in the manner described in subsection (c) of this section; and

(2) except as provided in subsection (b) of this section, not less than 90 days prior to the date on which such termination or nonrenewal takes effect.

(b)(1) In circumstances in which it would not be reasonable for the franchisor to furnish notification, not less than 90 days prior to the date on which termination or nonrenewal takes effect, as required by subsection (a)(2) of this section—

(A) such franchisor shall furnish notification to the franchisee affected thereby on the earliest date on which furnishing of such notification is reasonably practicable;

. . . .

(c) Notification under this section—

(1) shall be in writing;

(2) shall be posted by certified mail or personally delivered to the franchisee; and

(3) shall contain—

(A) a statement of intention to terminate the franchise or not to renew the franchise relationship together with the reasons therefor;

(B) the date on which such termination or nonrenewal takes effect;

. . . .

15 U.S.C. § 2804.

Of particular importance to this case are those provisions of the PMPA outlining grounds for termination and nonrenewal. In relevant part, section 2802 provides:

(b)(1) Any franchisor may terminate any franchise ... or may fail to renew any franchise relationship, if—

(A) the notification requirements of section 2804 of this title are met; and

(B) such termination is based upon a ground described in paragraph (2) or such nonrenewal is based upon a ground described in paragraph (2). . . .

15 U.S.C. § 2802. Paragraph 2 of subsection (b) provides in pertinent part:

(2) For purposes of this subsection, the following are grounds for termination of a franchise or nonrenewal of a franchise relationship:

. . . .

(C) The occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable, if such event occurs during the period the franchise is in effect and the franchisor first acquired actual or constructive knowledge of such occurrence—

(i) not more than 120 days prior to the date on which notification of termination or nonrenewal is given, if notification is given pursuant to section 2804(a) of this title; or

(ii) not more than 60 days prior to the date on which notification of termination or nonrenewal is given, if less than 90 days notification is given pursuant to section 2804(b)(1) of this title.

15 U.S.C. § 2802(b). Finally, section 2802 declares:

(c) As used in subsection (b)(2)(C) of this section, the term "an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable" includes events such as—

. . . .

(12) conviction of the franchisee of any felony involving moral turpitude.

■ In sum, Defendant Exxon may terminate the franchise or nonrenew the franchise relationship if Defendant: (1) provides good grounds for termination; (2) satisfies the time requirements; and (3) gives proper written notice. Termination that fails to comply with the PMPA gives Plaintiff grounds for a civil action under 15 U.S.C. § 2805(a) and injunctive relief under 15 U.S.C. § 2805(b).

1. Good Grounds for Termination

■ Plaintiff pled guilty[4] to a felony charge of conspiracy to distribute cocaine under 21 U.S.C. §§ 846 and 841(a)(1). De-

**4.** A knowing, voluntary, and intelligent guilty plea to an offense conclusively establishes elements of offense and material facts necessary to support conviction. *United States v. Willis,* 992 F.2d 489, 490–91 (4th Cir.1993).

fendant asserts that Plaintiff's guilty plea constitutes grounds for termination and non-renewal of the franchise under the PMPA. 15 U.S.C. § 2802(c)(12); *see Portaluppi v. Shell Oil Co.,* 869 F.2d 245 (4th Cir.1989).

■ Under North Carolina law, crimes involving moral turpitude are those criminal acts which can be described as base, vile, despicable, or depraved. *Jones v. Brinkley,* 174 N.C. 23, 93 S.E. 372 (1917). The Fourth Circuit's definition is essentially similar. *Castle v. INS,* 541 F.2d 1064 (4th Cir.1976) (moral turpitude defined as "an act of baseness or depravity contrary to accepted moral standards") (quoting *Guerrero de Nodahl v. INS,* 407 F.2d 1405, 1406 (9th Cir.1969)).

Some courts have concluded that "narcotics possession, by itself, is not a crime of moral turpitude." *Portaluppi,* 684 F.Supp. 900, 904 (E.D.Va.1988). However, "[v]irtually all courts agree that narcotics possession *with intent to distribute* is a crime involving moral turpitude." *Id.* at 904 n. 13; *see, e.g., Atlantic Richfield Co. v. Guerami,* 820 F.2d 280 (9th Cir.1987) (PMPA case holding that possession with intent is a crime involving moral turpitude, therefore franchise was properly terminated); *United States ex rel. De Luca v. O'Rourke,* 213 F.2d 759, 762 (8th Cir.1954) ("there can be nothing more depraved or morally indefensible than conscious participation in illicit drug traffic").

After consideration of the relevant precedent and arguments by Plaintiff and Defendant, the court finds that Plaintiff was convicted of a felony involving moral turpitude. Plaintiff has failed to establish the existence of sufficiently serious questions going to whether he was convicted of a felony involving moral turpitude to make such questions a fair ground for litigation.

Plaintiff argues that the guilty plea for the felony charge "was in no way 'an event which is relevant to the franchise relationship.'"

(Pl.'s Br. in Supp. of Pl.'s Mot. for T.R.O. and Prelim.Inj. at 13.) He argues that the actions giving rise to his guilty plea occurred "during the period from 1989 until 1990 or 1991, prior to the inception of the franchise." (Pl.'s Br. in Supp. of Pl.'s Mot. for T.R.O. and Prelim.Inj. at 13.) In addition, Plaintiff contends that the guilty plea "has not adversely affected the operation of the business of the Service Station."[5] (Pl.'s Br. in Supp. of Pl.'s Mot. for T.R.O. and Prelim.Inj. at 14.)

■ Plaintiff's contention that the conviction for a felony involving moral turpitude must be "relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship must be reasonable...." is incorrect. According to the wording of the statute, conviction of the franchisee of any felony involving moral turpitude is defined as a "relevant" event which makes termination or nonrenewal "reasonable." Once a determination has been made that the franchisee was convicted of a felony involving moral turpitude, there is no need for an independent finding that the conviction for the felony relates in any way to the operation of the franchise. Under the statute, conviction of a felony involving moral turpitude by definition is sufficient grounds for termination of a franchise or nonrenewal of a franchise relationship.

2. Time Requirements

According to Plaintiff's franchise agreement, the franchise was scheduled to expire on December 1, 1995.[6] On October 23, 1995, Defendant sent Plaintiff notice that Defendant intended to terminate the franchise and nonrenew the franchise relationship effective December 1, 1995. This notice was given only 39 days prior to the scheduled termination of the franchise.

■ Generally, 90 days' notice is required to terminate a franchise or nonrenew a fran-

---

5. Plaintiff alleges that the "operation and management of this business has been assumed and continued, at Plaintiff's direction and with Defendant's knowledge and acquiescence, by persons experienced in service station management and familiar with Plaintiff's franchise operations. Since June 22, 1995, the business of the Service Station has continued to operate profitably and

in conformity with the requirements of the franchise relationship." (Pl.'s Br. in Supp. of Pl.'s Mot. for T.R.O. and Prelim.Inj. at 14.)

6. Under the PMPA, a franchisor must have grounds for failing to renew a franchise agreement.

chise relationship. Section 2804(b)(1) contains an exception to this rule. In circumstances where it would not be reasonable for the franchisor to give the franchisee 90 days' notice, the franchisor is permitted to give notice "on the earliest date on which furnishing of such notification is reasonably practicable." 15 U.S.C. § 2804(b)(1). Courts have permitted termination following less than 90 days' notice under substantially less compelling circumstances than those present in the instant case. *See, e.g., Abujudeh v. Mobil Oil Corp.*, 841 F.2d 310, 312 (9th Cir.1988) (less than 90 days' notice permitted to prevent revocation of conditional use permit by municipality for franchisee's refusal to comply with conditions related to parking, illumination at night, and landscaping); *Marathon Petroleum Co. v. Pendleton*, 889 F.2d 1509 (6th Cir.1989) (less than 90 days' notice permitted for delinquent payments by franchisee); *Wisser Co. v. Mobil Oil Corp.*, 730 F.2d 54, 61 (2d Cir.1984) (franchisor permitted to provide no notice where franchisee misbranded gasoline); *Glenside West Corp. v. Exxon Co., U.S.A.*, 761 F.Supp. 1118, 1131 (D.N.J. 1991) (once franchisee was convicted of felony involving moral turpitude, franchisor was justified in immediately terminating the franchise); *ARCO Petroleum Products Co. v. Williams*, 146 Ill.App.3d 218, 221, 100 Ill. Dec. 33, 35, 496 N.E.2d 1098, 1100 (1986) (immediate termination was justified under the PMPA where franchisee allegedly attacked franchisor's driver who was attempting to make delivery).

After consideration of the arguments of Plaintiff and Defendant and a review of the case law, the court finds that termination of the franchise agreement with 39 days' notice is reasonable. The court further finds that Defendant notified Plaintiff on the earliest date reasonably practicable.

■ One additional timing issue must be addressed. The termination provision relied on by Defendant, 15 U.S.C. § 2802(c)(12), restricts the potential applicability of the less than 90 days' exception of § 2804(b)(1) to situations in which the event justifying termi-

nation occurs not more than 60 days prior to the date notification is given. 15 U.S.C. § 2802(b)(2)(C)(ii).

Notice of termination and nonrenewal was sent to Plaintiff on October 23, 1995. Plaintiff received the notification "on or about October 26, 1995." (Pl.'s Br. in Supp. of Pl.'s Mot. for T.R.O. and Prelim.Inj. at 17 n. 2.) August 27, 1995, marks the beginning of the 60–day period prior to the notification date. Thus, in order to meet the second time requirement, Defendant must have acquired actual or constructive knowledge of the guilty plea no earlier than August 27, 1995.

Plaintiff tendered his guilty plea and was sentenced and incarcerated on June 22, 1995. Thus, Plaintiff argues that Defendant had actual or constructive knowledge of the conviction on June 22, 1995. As a result, Plaintiff contends that Defendant knew of the relevant event more than 60 days before providing the notice of termination and nonrenewal. Defendant argues that Plaintiff did not provide notice of his guilty plea. Defendant asserts that Defendant did not have actual or constructive knowledge of Plaintiff's conviction until September 1995.[7] Therefore, Defendant posits that it acquired knowledge of the event justifying termination within the 60–day period before notification was given.

The court finds that Defendant did not acquire actual or constructive knowledge of the conviction until September 1995; therefore, Defendant satisfied the requirements of 15 U.S.C. § 2802(b)(2)(C)(ii).

**3. Written Notice Requirements**

■ The final requirement for proper termination or nonrenewal under the PMPA requires that notification must: (1) be in writing; (2) be posted by certified mail or personally delivered to the franchisee; (3) contain a statement of intention to terminate or nonrenew; and (4) contain the date on which termination or nonrenewal is to take effect. 15 U.S.C. § 2804(c).

The letter meets the four requirements for notification under the statute; therefore, the

---

7. Plaintiff's sister and father met with officials from Exxon between June 22, 1995, and September 1995. Neither Plaintiff's sister nor father told the Exxon officials that Plaintiff had pled guilty to the drug conspiracy charge.

court finds that Defendant met the written notice requirements with the letter dated October 23, 1995.

## III. CONCLUSION

Plaintiff has failed to establish the existence of sufficiently serious questions going to the merits to make such questions a fair ground for litigation. Thus, the court finds that Plaintiff does not meet the standard for preliminary injunction under the PMPA.

For the reasons stated herein, Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction will be denied. Defendant's Motion for Preliminary Injunction will also be denied.

An order in accordance with this memorandum opinion shall be filed contemporaneously herewith.