**William T. BROWN, d/b/a Brown's Exxon Service Center, II**

v.

**The MAGNESS COMPANY, INC.**

**Civ. A. No. G–85–8.**

United States District Court, S.D. Texas, Galveston Division.

Aug. 27, 1985.

---

Herbert W. Fortson, III, Houston, Tex., for plaintiff.

Garth E. Wood, Watson, Wiginston, Wood & LeCompte, Alvin, Tex., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HUGH GIBSON, District Judge.

Plaintiff, William T. Brown, seeks damages and injunctive relief against the defendant Magness Company, Inc., for its failure to renew a lease agreement covering an Exxon service station operated by the plaintiff.

On July 17, 1985, the Court heard plaintiff's motion for a preliminary injunction which, by the parties' agreement, was extended to cover all declaratory and permanent injunctive relief. Having considered all evidence presented and counsel's arguments, the Court now makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Since 1975, plaintiff has been operating Brown's Exxon Service Center II, located at 641 Plantation Drive, Clute, Brazoria County, Texas. From 1975 to 1981, plaintiff leased the premises directly from Exxon.

2. On October 30, 1981, plaintiff entered into a written agreement to lease the premises from defendant Magness Company, Inc., an Exxon distributor. The lease covered three years, from December 1, 1981, to November 30, 1984, and affixed a monthly rental of $1,900.00, with annual increases not to exceed 12% of the preceding year's rent.

3. The lease in question contains the following provision:

"In the event that this lease expires and it has not been renewed ... and if Lessee retains possession of the leased premises from and after the date of such lease expiration, then Lessor shall have

the right ..., at its election, upon notice to lessee to consider such holding over as a *month-to-month extension* of the term of this lease ..." (Emphasis added.) (*See* plaintiff's Exhibit 1.)

4. Plaintiff is also the operator of a Mobil retail station across the street from Brown's Exxon Service Center II. The monthly rental for the Mobil station was substantially less than that of the Exxon station. In addition, plaintiff received a discount in monthly rent based on the number of gallons of gasoline sold at the Mobil station.

5. The volume of gasoline sold per month at Brown's Exxon Service Center II has substantially decreased over the years, evidencing a decline in business. In 1984–85, the average monthly sale was 18,000 gallons per month, compared to approximately 60,000 gallons in 1979–1980.

6. Since May, 1984, defendants have notified plaintiff of its intention to sell the premises and have offered the plaintiff the right of first refusal. Although the sale price continued to decline, plaintiff expressed no interest in purchasing the premises. Plaintiff testified that he was not profiting from his operation of Brown's Exxon Service Center II.

7. A real estate expert, Pamela Anderson, testified that considering the nature and conditions of the business, the lessor should charge a monthly rent of approximately over $4,000.00 in order to make a profit.

8. On October 17, 1984, defendant notified plaintiff in writing that the rent on his lease, which expired on November 30, 1984, would be $2,669.36 for December of 1984, and that "this amount will be in effect until a new agreement is reached". (*See* plaintiff's Exhibit 5).

9. On November 1, 1984, defendant mailed to plaintiff's attorney a written notice of its intent not to renew the lease, the non-renewal to be effective February 4, 1985. The notice stated that renewal of the lease would be uneconomical to the lessor. (*See* plaintiff's Exhibit 6.)

10. Plaintiff continued to occupy the premises on a month-to-month basis at a rental of $2,669.36 per month.

11. On January 3, 1985, plaintiff initiated this action and filed his motion for a preliminary injunction.

12. On April 30, 1985, defendant executed an option contract purporting to sell the premises in question to Landmark Industries, Inc. at $338,000.00. The buyer understood and was aware of plaintiff's option to exercise his right of first refusal.

13. On the same date, defendant mailed to plaintiff a proposed new lease, which increased the monthly rent to $4,375.00 and reduced the term to one year. The new lease also imposed a minimum gallonage requirement for monthly sale, and set minimum hours and days for the opening of business.

14. On June 6, 1985, defendant moved to dismiss plaintiff's action, contending that since a new lease had been offered, plaintiff's grievance became moot.

15. On June 12, 1985, defendant withdrew all prior notices and advised plaintiff that his lease would be "terminated" effective September 16, 1985, citing as reason for termination plaintiff's failure to agree on the proposed new lease. (*See* plaintiff's Exhibit 11.) The June 12, 1985, notice also advised plaintiff of his option to purchase the premises at $338,000.00 payable in cash.

16. Plaintiff is currently in possession of the premises until September 16, 1985.

### CONCLUSIONS OF LAW

1. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. § 2801, *et seq.*

2. The lease agreement in question establishes a franchise relationship between the parties, thereby subjecting the conduct of the lessor-franchisor to the mandates of the PMPA.

### Standard for Injunctive Relief

3. The PMPA establishes a two-prong standard for injunctive relief. In any action challenging the franchisor's failure to renew a franchise relationship, a court may not compel continuation of such relationship, if the franchisor has demonstrated to the Court's satisfaction that:

"(A) the basis for such non-renewal is a determination made by the franschisor in good faith and in the normal course of business ...

(iii) to sell such premises, ... [or]

(iv) that renewal of the franchise relationship is likely to be uneconomical to the franchisor despite any reasonable changes or reasonable additions to the provisions of the franchise which may be acceptable to the franchisee; *and*

(B) the requirements of section 2804 [notice requirement] of this title have been complied with."

*See* 15 U.S.C. § 2805(e)(1).

4. The Court finds that the defendant has satisfied its burden under the first prong of the standard. The evidence sufficiently establishes defendant's bona fide determination to sell the premises and that plaintiff, although given the right of first refusal, was not interested in such option. The evidence also establishes that renewal under the terms of the old lease did not yield the desired profit. While the broad prophylactic goal of the PMPA is to protect the franchisee from abrupt, unfair, and discriminatory treatment, the legislative history of the Act also discloses Congress' intent to recognize the legitimate needs of a franchisor to respond to changes in economic circumstances. *Ames v. Texaco, Inc.*, 568 F.Supp. 1317 (W.D.Mich.1983), *app dism'd*, 727 F.2d 1108 (6th Cir.1984).

5. Under the second prong of the standard, the Court must next consider whether defendant had satisfied the notice requirements of the PMPA. Plaintiff has challenged the validity of defendant's non-renewal notice dated November 1, 1984, and alternatively, its notice dated June 12, 1985.

6. A franchisor's notice of termination or non-renewal must be in writing, posted by certified mail or personally delivered to the franchisee, and must contain the reasons for termination or renewal, as well as a "summary statement" of the Act prepared by the Secretary of Energy and published in the Federal Register. 15 U.S.C. § 2804(c). Such notice must be sent not less than ninety (90) days prior to the date on which the termination or non-renewal takes effect. 15 U.S.C. § 2804(a)(2).

### The November 1, 1984 Notice

7. The Court finds that defendant's notice dated November 1, 1984, was timely given. The defendant's letter of October 17, 1984, served to invoke the "month to month" option provided by the lease, thereby extending plaintiff's tenancy until a new lease was agreed to. Where the parties did not sign a new lease before the old lease expired and the terms of the old lease established a month-to-month tenancy, notice later furnished by the franchisor within 90 days before the nonrenewal took effect met the requirements of the PMPA. *Kesselman v. Gulf Oil Corp.*, 479 F.Supp. 800 (D.C.Pa.1979), *affirmed*, 624 F.2d 1090 (3rd Cir.1980); *Ferriola v. Gulf Oil Corp.*, 496 F.Supp. 158, 161 (E.D.Pa.1980), *aff'd*, 649 F.2d 859 (3rd Cir.1981).

8. Plaintiff's failure to furnish a "summary statement" as required by the Act does not render the November 1, 1984 notice invalid absent a showing of prejudice. Nor does defendant's delivery of the notice to the plaintiff's attorney, and not to plaintiff personally, make such notice defective so as to justify equitable relief. Although the notice requirement, 15 U.S.C. § 2804, must be strictly followed, *Thompson v. Kerr-McGee Refining Corp.*, 660 F.2d 1380 (10th Cir.1981), the statute does not contemplate an elevation of form over substance where plaintiff has not been deprived of actual notification. *See Martin v. Texaco, Inc.*, 602 F.Supp. 60 (N.D.Florida 1985).

*The June 12, 1985 Notice*

9. The Court next turns to the June 12, 1985 notice and finds that such notice complied with the procedural requirements of 15 U.S.C. § 2804. The plaintiff, however, argues that this notice is substantively invalid. Failure to agree to the proposed lease, plaintiff argues, does not constitute a permissible ground for terminating a franchise relationship.

Under subsection 2802(b)(3)(A) of the Act, failure to agree to changes in the franchise warrants non-renewal only if such changes are made by the franchisor in good faith, within the normal course of business, and not for the purpose of preventing renewal. Failure to agree as a permissible ground applies only to "non-renewal" and not "termination".

■ Although the June 12, 1985 letter spoke in terms of both renewal and termination, it was for the Court to determine whether there was "non-renewal" or "termination" for the purpose of applying the Act. *Lasko v. Consumers Petroleum of Connecticut, Inc.*, 547 F.Supp. 211 (D.Conn.1981). In light of the parties' attempt to negotiate a new lease and the lease provision allowing month-to-month tenancy in the interim, the Court concludes that the June 12, 1985 notice qualifies as a non-renewal notice.

■ 10. The Court finds that the defendant proposed changes in the lease agreement in good faith. The proposed new lease contains legitimate conditions which reflect the lessor's business judgment in the normal course of business so as to attain profit. The fact that new provisions in a franchise agreement may make the station unprofitable for the lessee is not of itself determinative of an improper purpose, *Meyer v. Amerada Hess Corp.*, 541 F.Supp. 321 (D.C.N.J.1982), nor does the fact that the new terms are presented on a take-it-or-leave-it basis constitute lack of good faith. *Meyer, Id.*

Accordingly, it is ORDERED, ADJUDGED and DECREED that Plaintiff's request for injunctive relief be, and is hereby, DENIED.

If any of the foregoing findings of fact constitute conclusions of law, they are adopted as such. If any of the foregoing conclusions of law constitute findings of fact, they are adopted as such.