

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-21-1995

# Patel v Sun Company, Inc.

Precedential or Non-Precedential:

Docket 94-2092

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Patel v Sun Company, Inc." (1995). *1995 Decisions.* Paper 230.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/230

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 94-2092

_____

Prakash H. Patel and Shobha P. Patel, h/w,

Appellants,

v.

Sun Company, Inc. and Lancaster Associates.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 94-cv-4318)

_____

Argued February 3, 1995

Before: SCIRICA, ROTH, and SAROKIN, Circuit Judges

(Opinion  Filed  August 21, 1995)

_____

Dimitri G. Daskal, Esquire (Argued)
The Daskal Law Group
700 13th St., N.W., Suite 950
Washington, DC 20005

Edward T. Rostick, Esquire
Williams & Scheetz
935 Second Street Pike
Richboro, PA    18954

        Attorneys for Appellants

James M. Brogan, Esquire (Argued)
Christopher W. Wasson, Esq.
Piper & Marbury
18th & Arch Streets
3400 Two Logan Square

1

Philadelphia, PA 19103

Attorneys for Appellee Sun Company, Inc.

John F. Fox, Jr., Esquire (Argued)
Law Offices of John F. Fox, Jr.
1420 Walnut St., Suite 1100
Philadelphia, PA 19102

Attorney for Appellee Lancaster Associates

_____

OPINION OF THE COURT

_____


ROTH, Circuit Judge:

This appeal represents the latest chapter in plaintiffs' ongoing obtain injunctive relief under the Petroleum Marketing Practices Act ("PMPA 2801 et seq. Specifically, plaintiffs, operators of a service station, hav preliminary injunction to prevent defendants from refusing to renew plainti and from evicting them from the franchise location, which plaintiffs have o 1978. Plaintiffs' initial request for injunctive relief was denied on the event required to trigger the enforcement provisions of the PMPA, terminati nonrenewal of a franchise, had not yet occurred. Now that the required non clearly occurred, the question presented by this appeal is whether injuncti still an available remedy for these plaintiffs against these defendants.

I.

Defendant Sun Company, Inc., ("Sun") is a refiner and marketer of In 1978, plaintiffs Prakash and Shobha Patel, husband and wife, entered int franchise relationship with Sun for the operation of a Sunoco service stati time of this original agreement, Sun owned the real estate on which the ser was located. This parcel also contained an office building with a parking

2

In December 1987, Sun sold the entire parcel of land to defendant

Associates ("Lancaster").[0]  Lancaster leased the service station back to Sun

September 30, 1994, and granted Sun the right to sublease it.  Sun then off

sublease the service station to the Patels for a period of three years.  Th

agreement specifically stated that Sun's right to grant possession of the p

be subject to an underlying lease which would expire on September 30, 1994.

agreement also clearly stated that the underlying lease "might expire or no

expiration of the initial term or any renewal option thereof."

On May 17, 1988, before the sublease agreement had been signed, t

suit in the Eastern District of Pennsylvania, alleging that Sun and Lancast

the PMPA.  The Patels claimed that the PMPA entitled them to a right of fir

before the franchise location could be sold and that Sun had failed to gran

right or to offer to sell the property to them.[0]  Accordingly, the Patels as

they were entitled to injunctive relief and money damages under the PMPA.

1988, the Patels signed the sublease with Sun.[0]

In October 1988, the district court denied the Patels' motion for

injunction, holding that the statutory precondition for injunctive relief,

the franchise, had not yet occurred.  Patel v. Sun Ref. & Mktg. Co., No. 88

at 1-2 (E.D. Pa. Oct. 14, 1988) ("Patel I").  On motion for reconsideration

affirmed its holding but invited the Patels to recast their complaint as on

---

[0]Lancaster is neither a refiner nor a distributor of motor fuels.  Additiona
is not a subsidiary of, nor does it have any other relationship with, Sun b
purchase of the real estate here in question.

[0]The parties dispute whether Sun offered to sell the service station premise
Patels before selling to Lancaster.  The district court did note during the
proceedings that:  "The franchisor has sold the premises without first offe
franchisees a chance to purchase."  Patel v. Sun Ref. & Mktg, 710 F. Supp.
1989) ("Patel II").

[0]The Patels assert that they signed this renewal, with its notice of the lea
because they had no choice. Supplemental Appendix at 132.

2

declaratory judgment.  Patel v. Sun Ref. & Mktg. Co., 710 F. Supp. 1023, 10 1989) ("Patel II").

Although the Patels amended their complaint, the district court their request for relief under the PMPA on the ground that the triggering a under the statute, nonrenewal of the franchise, had not yet occurred. Patel Mktg. Co., 1992 WL 25737, at *2 (E.D. Pa. 1992) ("Patel III").  The Patels this order.

Meanwhile, in December 1991, the Patels and Sun executed another extending the term to August 20, 1994. This new sublease, like its predeces stated that Sun's right to grant possession of the premises was subject to lease with Lancaster, which would expire on September 30, 1994.

On April 28, 1994, 120 days before the expiration of the sublease the Patels that their franchise and sublease would not be renewed due to th Sun's underlying lease with Lancaster.  The underlying lease between Sun an expired on September 30, 1994.

After receiving notice from Sun that their franchise would not be Patels in July 1994 commenced the instant action in district court, again a the nonrenewal of their franchise was improper under the PMPA because Sun h the Patels a right of first refusal before the sale to Lancaster, nor had i sell the property to the Patels.  In deciding the Patels' motion for a prel injunction, the district court found that, because Sun's sale of the premis did not constitute a termination or nonrenewal of the franchise, the Patels the PMPA were not triggered at that time.  Patel v. Sun Co., 866 F. Supp. 8 Pa. 1994) ("Patel IV").  The court further held that Sun's loss of the righ possession of the premises due to the expiration of its underlying lease wi was a valid reason for nonrenewal under the PMPA and that, therefore, no se existed regarding the merits of the Patels' PMPA claim.  Id. at 873-74.  Ac

3

Patels' motion for a preliminary injunction was denied.  The Patels appeale

granted a stay pending appeal.

## II.

The PMPA regulates the relationship between motor fuel distribu

principally oil refiners, and their franchisees, principally retail gas sta

Prior to the passage of the PMPA, evidence suggested that "distributors had

threat of termination or nonrenewal to compel franchisees to comply with th

marketing policies . . . [and] to gain an unfair advantage in contract disp

v. Amoco Oil Co., 830 F.2d 476, 478 (3d Cir. 1987) (in banc) (citing S. Rep

Cong., 2d Sess. 17-19, 1978 U.S.C.C.A.N. 873, 875-77) ("Senate Report").

passing the PMPA, Congress sought to "protect a franchisee's 'reasonable ex

continuing the franchise relationship while at the same time insuring that

have 'adequate flexibility . . . to respond to changing market conditions a

preferences.'"  Id. (quoting Senate Report at 19, 1978 U.S.C.C.A.N. at 877)

In order to effectuate these purposes, the PMPA prohibits distrib

terminating or nonrenewing franchises, unless the termination or nonrenewal

one of the enumerated grounds set forth in the statute.  15 U.S.C. § 2802.

enumerated exceptions involve franchisee misconduct, which is not alleged i

See, e.g., § 2802(b)(2)(C) (termination based upon franchisee's failure to

under the franchise agreement); §2802(b)(3)(B) (nonrenewal based upon "bona

complaints" about franchisee's operations); § 2802(b)(3)(C) (nonrenewal bas

franchisee's failure to operate property "in a clean, safe, and healthful m

In addition to the exceptions for franchisee misconduct, the PMPA

authorizes nonrenewal for a limited set of business reasons, two of which a

the instant appeal.  First, a distributor may fail to renew a franchise agr

distributor decides to sell the premises "in good faith and in the normal c

business."  §2802(b)(D)(i)(III).  In such a case, however, the distributor

4

have offered to sell the premises to the franchisee, § 2802(b)(D)(iii)(I),

the franchisee a right of first refusal of the purchaser's offer, § 2802(b)

Second, a distributor may fail to renew a franchise agreement upon the "occ

event which is relevant to the franchise relationship and as a result of wh

nonrenewal of the franchise is reasonable." § 2802(b)(2)(C). One "relevan

recognized in the statute is the franchisor's loss of its "right to grant p

the leased marketing premises through expiration of an underlying lease."

Section 2805(a) of the statute creates a civil cause of action fo

against franchisors for violations of the statute. In these civil actions,

free to exercise "such equitable relief . . . necessary to remedy the effec

violation. § 2805(b)(1). This equitable relief includes, but is not limit

preliminary injunctions. Id. Section 2805(d) also provides for an award of

exemplary damages and of attorney and expert witness fees to a franchisee w

a civil action against a franchisor. Section 2805(e) then provides an excep

award of injunctive relief in that the court may not compel a continuation

franchise if the franchisor has demonstrated to the court that the nonrenew

franchise was caused by the decision of the franchisor, made in good faith

normal course of business, to convert, alter, or sell the premises or to wi

marketing fuel oil in that geographic market area.

III.

We review the district court's conclusions of law in a plenary

findings of fact under a clearly erroneous standard, and its decision to gr

---

[0]In 1994, Congress amended the "loss of underlying lease" exception by requi
franchisor to offer to assign to the franchisee "any option to extend the u
or option to purchase the marketing premises that is held by the franchisor
103-371, 103d Cong., 2d Sess., 108 Stat. 3484-85. That amendment is not ap
present case.

5

injunction for abuse of discretion.  Johnson & Johnson-Merck Consumer Pharm

Rhone-Poulenc Rorer Pharmaceuticals, 19 F.3d 125 (3d Cir. 1994).

A.

We begin our analysis of the instant appeal with plaintiffs' requ

injunction against Lancaster.  Plaintiffs' cause of action against both def

of § 2805(a) of the PMPA which reads, in relevant part:

> If a franchisor fails to comply with the requirements of section 2802
> this title, the franchisee may maintain a civil action against such fr

§ 2805(a) (emphasis added).  In the PMPA, "franchisor" is defined as:

> a refiner or distributor . . . who authorizes or permits, under a fran
> retailer or distributor to use a trademark in connection with the sale
> consignment, or distribution of motor fuel.

§ 2801(3).  Thus, the application of the PMPA is limited to causes of actio

between franchisees and franchisors engaged in the petroleum marketing fiel

from the facts presented in this case, however, that Lancaster is not a ref

distributor of motor fuel, and therefore falls outside the literal scope of

For this reason, the Patels cannot obtain relief against Lancaster under th

Plaintiffs maintain, however, that Lancaster, as the purchaser of

should be "charged with notice of Sun's obligations under [the] PMPA" and s

"title subject to those obligations."  Complaint, ¶24.  We find this argume

unpersuasive.  Plaintiffs fail to indicate any evidence, either in the text

in its legislative history, that the PMPA was meant to apply beyond the fra

franchisor relationship.  Cf. Barnes v. Gulf Oil Corp. 824 F.2d 300, 303-04

1987) (permitting individuals or small companies to qualify as "franchisors

large refiners and distributors to terminate their relationship with a fran

assigning the remainder of the franchise term to small enterprises with lim

resources).  Moreover, it would seem beyond any legal or practical ability

license the Patels to use the Sun trademarks or to provide the Patels with

6

products for retail sale.  Therefore, because the language of the statute i

we find no reason to apply the PMPA to Lancaster.[0]

B.

Our analysis turns next to the Patels' request for an injunction

The criteria that courts are to consider in determining whether to grant a

injunction under the PMPA are set out in § 2805(b)(2) of the act, which rea

part:

> [T]he court shall grant a preliminary injunction if--
>
> (A) the franchisee shows--
>
> (i) the franchise of which he is a party has been terminated or the relationship of which he is a party has not been renewed, and
>
> (ii) there exist sufficiently serious questions going to the merits such questions a fair ground for litigation; and
>
> (B) the court determines that, on balance, the hardships imposed upon franchisor by the issuance of such preliminary injunctive relief will than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted.

§ 2805(b)(2).

In denying the Patels' motion for a preliminary injunction, the d

determined that no sufficiently serious questions regarding the merits exis

a balancing of the hardships.  In reaching this conclusion, the district co

part on the judgment that "[w]hen Sun sold the station to Lancaster it did

or fail to renew the Patels' franchise relationship."  Patel IV, 866 F. Sup

---

[0] The dissent argues in Part V that Lancaster took title to the real property Sun's obligations as a franchisor under the PMPA and thereby is subject to responsibilities with respect to the property as was Sun.  For the reasons court in Barnes, however, we cannot agree that a petroleum refiner/distribu able to pass on all or part of its obligations under the PMPA to a third pa not qualify as a franchisor under the PMPA.

[0] This conclusion echoes the conclusion reached earlier in Patel I, Patel II, III.  In those cases, the determination that the sale of the property did n

7

Our determination to deny the Patels' motion for a preliminary in

against Sun is not, however, based upon this conclusion.  It is based on §

bars an injunction that would require a franchisor to continue a franchise

which the franchisor, in good faith and in the normal course of business, h

sell.[0]  In other words, if a franchisor does not want to take over a franchi

to transfer it to another dealer, but simply for business reasons wants to

retail operations in a certain location, the PMPA will not enjoin a franchi

so provided the decision is made in good faith and in accordance with the r

§ 2804.

If the franchisor does attempt to close down the franchise locati

meeting the requirements of § 2802, however, it may be liable in damages to

franchisee.  Although § 2805(e) does not permit a permanent injunction main

franchise under these circumstances, it does provide for the franchisee to

damages and reasonable attorney and expert witness fees if, for instance, t

has failed to offer to sell the premises to the franchisee prior to a sale

party.

Because the record here demonstrates that Sun did not take over t

order to operate it for its own account or to lease it to a new tenant, see

2802(b)(2)(E), we conclude that the district court could not enter a perman

requiring Sun to continue the Patel's franchise at its present location.  I

---

termination or nonrenewal of the Patels' franchise led the court to find th
rights under the PMPA had not yet been triggered.

Unlike the court in these earlier decisions, we are not confident
sale of the station to Lancaster did not constitute an action sufficient to
Patels' rights under the statute.  It is important to note, however, that t
have appealed the decisions in Patel II and Patel III, but chose not to.  A
this Court must decide the instant appeal in light of the parties' current

[0]The dissent, citing the legislative history, argues that §2805(e) applies o
permanent, not to preliminary, injunctions. The language of the statute doe
make that distinction.

8

provisions of § 2805(e), we find that the denial of the injunction by the d

was not erroneous.

Clearly, one cannot help but feel some sympathy for the Patels. their initial attempt to obtain injunctive relief, they were sent away and such relief when their franchise was not renewed. Now, having returned to occurrence of the nonrenewal, they are told that they are not eligible for relief. The Patels still have, however, the opportunity to present to the their contention that the nonrenewal of their franchise violates § 2802 bec given for nonrenewal, the expiration of the underlying lease, was a conditi the franchisor when it sold the property without offering the franchisee an purchase it. Even if injunctive relief is no longer available to the Patels provide for awards of damages and fees to a franchisee who is successful in against a franchisor. 15 U.S.C. § 2805(d) and (e).[0]

Additionally, we note that the language of the statute may have c Patel's situation. If there is a gap in the provisions of the PMPA, it sho corrected by Congress if Congress decides that this gap could undermine its passing the PMPA. This decision, however, belongs with Congress and not wi

IV.

In conclusion, we will affirm the district court's denial of the for a preliminary injunction against Sun and Lancaster. The Patels, howeve

---

[0] The dissent states that "[t]he majority holds that the franchisor to offer to sell to the franchisee can be avoided simply by postponing the termination of the franchise to a time subsequent to the title closing." D 1; see also id. at 13 ("The majority opinion, however, holding that a sale-followed by expiration of an underlying lease makes nonrenewal reasonable, franchisors to completely dispense with the bona fide offer requirement."). hold. Instead, we hold that a franchisor that fails to offer the property franchisee before selling to another is liable to the franchisee for damage be enjoined from the sale, provided the transaction is made in good faith a normal course of business, with the requisite notice.

9

the opportunity to seek damages under the PMPA.  Accordingly, we will reman

to the district court for further proceedings consistent with this opinion.

Patel v. Sun, No. 94-2092


SAROKIN, Circuit Judge, dissenting:

I respectfully dissent because I believe that the majority opinio franchisors to circumvent one of the most fundamental protections afforded franchisees under the PMPA -- namely the right to purchase the franchise pr franchisor elects to sell. The majority holds that the franchisor's obliga to sell to the franchisee can be avoided simply by postponing the nonrenewa termination of the franchise to a time subsequent to the title closing.

While the statute does permit the franchisor to sell its premises economic reasons, it grants an important corollary right to the franchisee investment in the premises by affording it an opportunity to purchase the p sale will result in the termination or nonrenewal of the franchise. At a m unique circumstances presented here establish fair grounds for litigation a the issuance of a preliminary injunction. Accordingly, I would reverse the remand for entry of injunctive relief.


**I.**

In addition to the facts set forth in the majority opinion, the f significant.


11

At the time that Lancaster purchased the parcel of land from Sun 1987, plaintiffs allege that pursuant to the purchase and sale agreement, S Lancaster for any PMPA claims arising out of the transaction. Although pla not supplied the court with this agreement, the parties acknowledged the ex indemnification clause at oral argument before the district court. Supplem ("S.A.") at 16, 148-50.

After purchase, Lancaster leased the franchise location back to S years, through September 30, 1994, and granted Sun the right to sublease th According to the testimony of its general partner, it was Lancaster's expec time of purchase that upon the expiration of the lease-back in 1994, Sun wo underground fuel tanks, clean the soil, and "put the property back into its condition without any oil tanks or environmental problems." S.A. at 151. T December 1987 plaintiffs' ability to continue in business at the franchise due to expire no later than September 1994.

After completing the sale and taking the lease-back from Lancaste a three-year sublease to plaintiffs. Recognizing that Sun's sale to Lancast a threat to the continuation of their franchise, plaintiffs immediately bro district court in May 1988, alleging that Sun and Lancaster had violated th after filing suit did plaintiffs sign the sublease.

> An "Amendment and Ratification" to the sublease stated:
> UNDERLYING LEASE
> Company's right to grant possession of the Premises to Dealer is underlying lease which contains an initial term of Six years; Nin Seven Days (6Years, 9Months & 7Days) years, [sic] from 12/23/87 t NO RENEWALS which lease might expire or nonrenew at the expiratio initial term or any renewal option thereof.

S.A. at 220. It was thus evident to the Patels that any opportunity they h the premises from Sun and thereby continue their franchise operation would lost upon termination of Lancaster's lease to Sun. When asked at a hearing

12

litigation whether he executed the 1988 sublease, Mr. Patel replied, "Yes, choice."  S.A. at 132.

After the district court rejected the plaintiff's request for an Patel I and then again on motion for reconsideration in Patel II, plaintiff complaint to seek a declaratory judgment at the invitation of the court. Th repeated its conviction that "the PMPA does give to the franchisee the righ refusal in the event of the franchisor's non-renewal," but dismissed the co nonrenewal had not yet occurred.  Patel v. Sun Refining and Marketing Co., at *1 (E.D.Pa. 1992)("Patel III").  The district court made clear that "[i]f occurs, plaintiffs will have the protection of the PMPA at their disposal." Plaintiffs did not appeal.

Nonrenewal, identified by the district court in 1988, 1989, and 1 qua non of a PMPA claim for relief, has now occurred.  In Spring 1994, Sun plaintiffs that their franchise and sublease would not be renewed because o expiration of Sun's lease-back with Lancaster.  Plaintiffs promptly commenc arguing that their PMPA claims were now ripe and, as they have maintained s the 1987 sale between Sun and Lancaster could not extinguish or reduce thei the Act.

The district court denied plaintiffs' motion for a preliminary in relying on the earlier ruling that Sun's sale of the premises did not "trig plaintiffs' rights under the Act, but ignoring the corollary that upon nonr rights would attach.  Patel v. Sun Co., 866 F.Supp. 871, 872 (E.D.Pa. 1994)

Thus, when plaintiffs first sought injunctive relief, it was deni grounds that notwithstanding the sale, their franchise remained in effect. assured, however, that if and when the franchise was adversely affected, th would be protected.  But injunctive relief was likewise denied when nonrene occurred, on the grounds that it was not the sale but rather the expiration

13

back which resulted in the nonrenewal.  In essence, the district court told

1988 that their claims were too early and in 1994 that their claims were to

## II.

The PMPA regulates the relationship between motor fuel distributo

franchisees.  A principal reason for Congress' passage of the PMPA was to p

franchisees from having their businesses subject to termination at the hand

unscrupulous franchisors.  As noted by the majority, evidence at Congressio

the PMPA "indicated that distributors had been using the threat of terminat

nonrenewal to compel franchisees to comply with the distributor's marketing

[and] to gain an unfair advantage in contract disputes." Slatky v. Amoco Oi

476, 478 (3d Cir. 1987)(in banc)(citing S.Rep. No. 731, 95th Cong., 2d Sess

U.S.C.C.A.N. 873, 875-77) ("Senate Report").  In response to such evidence,

passed the PMPA to prevent large petroleum companies from exploiting franch

O'Shea v. Amoco Oil Co., 886 F.2d 584, 587-88 (3d Cir. 1989); see also Sun

Marketing Co. v. Rago, 741 F.2d 670, 673 (3d Cir. 1984)("major thrust" of P

protect franchisees from arbitrary or unfair termination"); Barnes v. Gulf

F.2d 300, 304-05 (4th Cir. 1987)(PMPA's "principal concern" is "protection

franchisees"); Khorenian v. Union Oil Co., 761 F.2d 533, 535 (9th Cir. 1985

construed liberally to achieve legislative goal of protecting franchisees);

Mobil Oil Corp., 864 F.2d 981, 982 (2d Cir. 1989)(PMPA directed at "the Dav

Goliath aspect of the relationship between the small retailer franchisee an

petroleum company franchisor").

The statute achieves this purpose by enacting the general rule th

distributor may terminate or fail to renew a franchise, except for enumerat

upon adequate notice. §2802(a).  Most exceptions involve franchisee miscond

not an issue in this case.  See §2802(b)(2)(A)&(B), (b)(3)(B)&(C).  To enfo

14

rule against termination or nonrenewal, the Act establishes a private right

a franchisee whose franchise has been terminated or not renewed. This court

the Act as creating "a presumption that any termination of a franchise is u

Rago, 741 F.2d at 672.

As stated by the majority, nonrenewal of a lease by a franchisor

by the PMPA for a limited number of business decisions, two of which are at

First, a distributor may fail to renew the franchise agreement of a franchi

property from the distributor if "in good faith and in the normal course of

distributor decides to sell the premises, provided the distributor first of

property for sale to the franchisee. §2802(b)(3)(D).

Second, the PMPA permits a distributor to nonrenew the agreement

"occurrence of an event which is relevant to the franchise relationship and

which . . . nonrenewal of the franchise is reasonable." §2802(b)(2)(C). O

event" which, by the statute's own definition renders nonrenewal reasonable

of the franchisor's "right to grant possession of the leased marketing prem

expiration of an underlying lease." §2802(c)(4).[0]

## III.

I begin my analysis with the Patels' request for an injunction ag

enforcement provisions of the PMPA grant the district court broad powers to

effects of a franchisor's failure to comply with the Act, including the aut

interim equitable relief. §2805(b)(1). Under the relaxed standard for a p

injunction, an aggrieved franchisee must show (1) a franchise has been term

renewed; (2) there are sufficiently serious questions going to the merits t

---

[0] In 1994 Congress amended the "loss of underlying lease" exception by requir
franchisor to offer to assign to the franchisee "any option to extend the u
or option to purchase the marketing premises that is held by the franchisor
371, 103rd Cong., 2nd Sess., 108 Stat. 3484-85.

15

questions a fair ground for litigation; and (3) the balance of hardships ti the franchisee. §2805(b)(2).  The second prong establishes a lower standard traditional requirement that a moving party demonstrate a substantial likel success on the merits.  Rago, 741 F.2d at 672.  In this case, the district determined that plaintiffs could not satisfy the second prong and denied re 866 F.Supp. at 873.

### A.        Termination or nonrenewal of the franchise

Plaintiffs and Sun are indisputably franchisees and franchisor re defined by the PMPA.  §§2801(2),(3). Unlike in the previous case, the franc non-renewed, and the first prong is satisfied.

### B.        Sufficiently serious questions going to the merits to m questions a fair ground for litigation

Sun maintains that it did not violate the general prohibition on because (1) the 1987 sale of the premises to Lancaster did not terminate or franchise, and thus its duty to offer plaintiffs the premises under §2802(b arise; and (2) the expiration of its underlying lease with Lancaster in 199 "relevant event" under §2802(c)(4), necessarily making nonrenewal reasonabl §2802(b)(C).  The district court agreed.

The question before us is whether the exception to the prohibitio invoked by defendants creates fair grounds for litigation, because of the s these events.

### 1. The "sale" exception

A franchisor may nonrenew a franchise based on its sale of the fr location, provided the franchisor first makes a bona fide offer to sell to §2802(b)(3)(D).  See Slatky, supra.  The parties dispute whether Sun offere the premises before selling them to Lancaster.

However, in the previous action, the district court commented tha the premises, without first offering plaintiff-franchisees a chance to purc

16

II, 710 F.Supp. at 1023.  See also Patel III, 1992 WL 25737 at *1 ("Sun . .
premises to defendant Lancaster Associates without first offering to plaint
opportunity to purchase the land").  Here, the district court stated that t
sued "based on the prior failure of Sun to offer the property to them for s
them a right of first refusal when Sun sold the property to Lancaster in 19
866 F.Supp. at 873, but ultimately it made no explicit finding as to whethe
a bona fide offer to plaintiffs before selling to Lancaster.

If Sun did make a bona fide offer, then defendants should be enti
the "sale exception" to the general prohibition on nonrenewal, provided the
of that exception are also met; if Sun made no offer, then defendants may n
1994 nonrenewal on this basis.

## 2. The "relevant event" exception

A franchisor may end a franchise if an event relevant to the fran
relationship occurs which makes termination or nonrenewal "reasonable."  §2
This exception (which I will refer to as the "relevant event" exception) do
on the franchisor providing the franchisee a right of first refusal.  A dif
of the Act provides that one relevant event which makes nonrenewal reasonab
the franchisor's right to grant possession" of the franchise location.  §28
maintains that the 1994 nonrenewal comported with the "relevant event" exce
pursuant to §2802(c)(4) the expiration of its lease-back necessarily made n
"reasonable."

First, I reject Sun's argument that §2802(c)(4) establishes a per
Congress itself has explained that the loss of the right to grant possessio
always satisfy the reasonableness requirement of the relevant event excepti

    it is not intended that termination or non-renewal should be perm
    upon the expiration of a lease which does not evidence the existe
    length relationship between the parties and as a result of the ex
    which no substantive change in control of the premises results.

Senate Report at 38, 1978 U.S.C.C.A.N. at 896.  Thus, there can be no per s

17

Second, the circumstances described in the Senate Report do not e

which expiration of an underlying lease fails to satisfy the "relevant even

Rather, the legislative history indicates that a court must give at least m

to the asserted "relevant event," even if that event is arguably enumerated

Thus, although plaintiffs have supplied no evidence that the transaction be

Lancaster was anything but at arms length, this does not end our inquiry, e

good faith.

Here, we are faced with a series of "relevant events" in which (1

franchisee entered the franchise relationship when the franchisor held titl

franchise location; (2) the franchisor sold the property to a party that do

or distribute motor oil; and (3) the franchisor non-renewed the franchise w

back expired.  For the purposes of this section, moreover, I will assume ar

failed to make a bona fide offer to the Patels before the 1987 sale.  Final

testimony by Lancaster's general partner indicated that it was Sun's intent

nonrenew the franchise in 1994.

Under these circumstances, I conclude that plaintiffs have establ

question whether Sun's loss of the right to grant possession is a relevant

nonrenewal reasonable presents fair grounds for litigation.  Several theori

conclusion.

First, the 1987 sale-without-offer was the "but for" cause of the

expiration of the underlying lease.  Because Lancaster is neither a refiner

distributor of motor fuel, the 1987 sale eroded plaintiffs' franchise right

its business, and positioned Sun to evade the Act in a manner I believe Con

proscribe.  Even when nonrenewal does not occur at the moment of sale, the

because the franchisee's rights are immediately diminished. See, e.g., Wagn

Distributing, No. C85-829R, slip. op., May 21, 1986 (W.D.Wash. May 22, 1986

18

sale of premises to party not bound by PMPA, without offering property to f diminished franchisee's "inchoate rights").

Second, one must distinguish between franchise relationships in w franchisor holds an underlying lease at the outset of the relationship and the franchisor's fee interest is unilaterally reduced to a leasehold after commencement of the franchise. In the first instance, the franchisee enter relationship with knowledge that it is subject to nonrenewal or termination expiration of the underlying lease, or any other event provided for therein franchisee can accept or reject the relationship fully cognizant at the out risks involved. Here, however, when the Patels chose to commence their rel Sun in 1978, Sun's control of the franchise location was not subject to an lease which could limit the duration of the franchise.

Third, the testimony that as of December 1987 Sun planned to nonr prevent Sun from establishing that it complied with the special notice requ "relevant event" exception. See §2802(b)(2)(C). All exceptions require no before nonrenewal. §§2802(b)(1), 2804. The "relevant event" exception, ho further requirement that the franchisor provide notice of nonrenewal "not m 120 days after it has "acquired actual or constructive knowledge" of the re §2802(b)(2)(C). If Sun had knowledge in 1987 that its lease-back would not 1994, then its notice was seven years late.

Fourth, in the previous case between plaintiffs and Sun, the dist warned Sun that in the event of nonrenewal, plaintiffs "will have the prote PMPA at their disposal." Patel III, 1992 WL 25737 at *2. See also Patel I at 1024 (franchisor's sale of the franchise location "cannot justify non-re franchise unless the franchisor did allow the franchisee to purchase").

Fifth, this conclusion comports with the legislative intent that protect the reasonable expectations of franchisees from unscrupulous franch

19

Slatky, 830 F.2d at 478–79.  The particular scheme at issue here, while not previously by our circuit, is precisely the sort of practice Congress sough The 1994 PMPA amendments, which increased the protections for a franchisee franchisor seeks to sell a franchise location, confirms that abusive franch remain an important Congressional concern.  See Pub.L. 103–371, 108 Stat. 3

Finally, a contrary holding is akin to writing into the PMPA an e exception to the general prohibition on nonrenewal.  Such an outcome is inc the Congressional intent that the reasonable expectations of franchisees be while at the same time the business judgment of franchisors be respected. F.2d at 478. The provision that a franchisor may sell in good faith so long franchisee is offered a right of first refusal accomplishes this legislativ majority opinion, however, holding that a sale-without-offer followed by ex underlying lease makes nonrenewal reasonable, allows franchisors to complet with the bona fide offer requirement.  The sale can take place without firs premises to the franchisee, followed by nonrenewal after the expiration of no matter how brief.

I conclude that when a franchisor owns a franchise location at th of the franchise relationship but sells it to a party that does not refine motor fuel, without making the franchisee a bona fide offer to sell and wit of non-renewing upon expiration of the franchisor's lease-back, then upon a nonrenewal there are fair grounds for litigation whether or not the "releva exception has been satisfied.  I would leave for trial final disposition of including, if necessary, proof of the elements of the "relevant event" exce

This conclusion is not undermined by the Patels' execution of two Sun, each of which informed the franchisees of the imminent loss of Sun's r possession.  First, before signing the 1988 sublease, the Patels sought to rights by filing the first lawsuit. Second, knowing that the sale had alrea

consummated, the Patels had absolutely no choice but to accept the terms an

proposed by Sun.  Sun's cross-examination of Mr. Patel makes this point man

Q          And, sir, isn't that correct that after the sale of thi
Lancaster Associates in January of 1988, you were offered and you entered i
the premises from 1988 through 1991?

A          Yes, I had no choice.

S.A. at 132.

Nor would I treat the execution of the 1988 sublease as the comme "new" franchise relationship, one entered by the Patels with full knowledge lose the right to grant possession of the premises in September 1994.  By 1 had already spent a decade developing the good will of their business.  The franchise agreement with Sun, executed in 1978, commenced the franchise rel

Nor finally am I persuaded by Sun's reference to cases in which a loss of an underlying lease satisfied the "relevant event exception," becau the franchise relationship commenced when the franchisor held a lease, not franchise location.  See Hutchens v. Eli Roberts Oil Co., 838 F.2d 1138, 11 1988); Veracka v. Shell Oil Co., 655 F.2d 445, 446-47 (1st Cir. 1981); Atki USA, Inc., 672 F.Supp. 1373, 1375 (W.D.Wash. 1987).  In these cases the fra on notice at the outset of the possible loss of the underlying lease and co reasonably expect that the franchisor's control of the property would conti indefinitely.       Isolated from the sale-without-offer, Sun's loss of the possession may make nonrenewal reasonable, but expiration of the lease-back should not be analyzed separately from the other relevant circumstances.  C Sun made a bona fide offer to the Patels before selling to Lancaster, then the "sale" exception to the general prohibition on nonrenewal.  If there wa plaintiffs have established sufficiently serious questions whether or not S satisfied the "relevant event" exception to make the issue fair grounds for

**C.          Balance of hardships**

The district court did not reach this element.  If the district c
find on remand, which I deem appropriate, that Sun did not make a bona fide
the 1987 sale, then the court should determine whether plaintiffs have sati
prong of the preliminary injunction standard, although it clearly appears e
based upon the undisputed facts.  See Barnes, 824 F.2d at 306 (balance of ha
PMPA invariably tips in favor of small franchisee rather than large franchi

## IV.

Sun maintains that even if plaintiffs have met the standard for i
preliminary injunction, §2805(e) bars a preliminary injunction when the bas
nonrenewal is the good faith sale of the premises.  Throughout this case, S
to characterize its nonrenewal as based on the expiration of the underlying
than the sale of the premises. If the basis for nonrenewal is indeed the ex
lease-back, then by its own terms §2805(e) does not apply.

Even if the basis for nonrenewal were the 1987 sale, the Patels c
§2805(e) applies only to permanent injunctions.  The sole court of appeals
this question held that the structure, purpose, and legislative history of
the conclusion that §2805(e) does not apply to preliminary injunctions.  Hi
Corp., 997 F.2d 641, 647 (9th Cir. 1993).  I agree.

The plain language of §2805(b)(2) makes issuance of a preliminary
mandatory when the three-pronged standard is met: "the court shall grant a
injunction if . . ." This provision is admittedly in tension with the langu
§2805(e)(1), which provides that a court "may not compel a continuation or
franchise relationship" in certain circumstances.  Thus we must look beyond
the statute.

22

First, Congress's overriding purpose in enacting the PMPA was to franchisee's reasonable expectation of continuing the franchise relationshi F.2d at 478; Rago, 741 F.2d at 672.

Second, the structure of §2805, entitled "Enforcement Provisions, linear, chronological development of the subsections: subsection (a) establ cause of action; (b) provides for interim equitable relief and sets forth t issuance of a preliminary injunction; (c) establishes the burdens of proof provides for legal remedies, including actual and exemplary damages, fees a (e) provides a limitation on equitable relief. See Hilo, 997 F.2d at 644-4

Third, the legislative history strongly indicates that Congress i §2805(e) to apply only to permanent injunctions. The Senate Report repeate characterized §2805(e) as limiting only permanent relief:

> An equitable defense to permanent injunctive relief is set forth [2805(e)]. The court is barred from issuing permanent injunctive elements of §2805(e) are met] . . . Such a defense to permanent i relief does not affect the right of the franchisee to recover [da . . . Under [§2805(e)], the court could not issue a permanent inj the nonrenewal . . . It should be stressed, however, that the cou permanent injunctive relief or award damages pursuant to [§2805(d the 'good faith' or the 'normal course of business' requirement s [§2805(e)(1)(A)] is not met.

Senate Report, 1978 U.S.C.C.A.N. at 899-900 (emphasis added).

Finally, I agree with the Ninth Circuit that as a matter of polic for a preliminary injunction should not be made the occasion for a mini-tri of good faith." Hilo, 997 F.2d at 646. It makes sense to reserve for tria elements of the §2805(e) defense, including the basis for the nonrenewal, g the part of the franchisor, and proper §2804 notice.

Thus §2805(e) does not apply to preliminary injunctions and shoul of interim relief here. The provision would remain available to Sun as a d trial, if the district court determined that the basis for nonrenewal is in

23

sale.  At that time Sun would carry the burden of establishing that the ele §2805(e) are satisfied.

**V.**

Lancaster contends that it is not a franchisor bound by the PMPA. Act's definition of a "franchisor," a party must be a refiner or distributo fuel.  §2801(3). The parties have stipulated that Lancaster is not a refine distributor of motor fuel.  S.A. at 21-22.

Plaintiffs maintain, however, that Lancaster, as purchaser from S with notice of Sun's obligations under PMPA and holds title subject to thos Complaint, ¶24.  The relevant obligation here is the PMPA's requirement tha relationship not be terminated or non-renewed except upon one of the Act's grounds. §2802(a).

First, the Pennsylvania Supreme Court has long held that "it is t purchaser of real property to make inquiry respecting the rights of the par possession and failing to do so they are affected with constructive notice as would have come to his knowledge in the proper discharge of that duty." Sedelsky, 80 A.2d 853, 855 (Pa. 1951).  See also Pato v. Cernuska, 493 A.2d (Pa.Super. 1985).  In addition, that Lancaster bargained for an indemnifica against all PMPA claims in its purchase agreement with Sun suggests that La least constructive notice of the Patels' statutory rights.

Second, under Pennsylvania law a purchaser takes subject to the r party in possession:
> Any person who acquires title to real property by descent or purc
> liable to the same duties and shall have the same rights, powers
> relation to the property as the person from whom title was acquir

24

68 Pa.C.S. §250.104.  <u>See</u>, <u>e.g.</u>, <u>De Marco v. Philadelphia</u>, 494 A.2d 875, 87

1985); Casner, <u>American Law of Property</u> §3.59 at 307-08 (1952) ("[a] transf

reversion who is a purchaser for value . . . takes subject to the lease if

or constructive notice of it").

These principles apply to a tenant's right of first refusal, as t

Supreme Court instructed purchasers long ago:

'[A] tenant being in possession under a lease, with an agreement to become the purchaser, those circumstances altogether give him repelling the claim of a subsequent purchaser, who made no inquir nature of his possession.' Knowledge of an option to purchase is range of what such an inquiry bindingly reveals.

<u>Atlantic Refining Co. v. Wyoming Nat'l Bank</u>, 51 A.2d 719, 724 (Pa. 1947) (q

Eldon in <u>Taylor v. Stibbert</u>, 2 Ves. 437).[0]

That the duties imposed on Lancaster arise under a statute  rathe

does not affect the purchaser's obligation to discharge those duties:

An obligation that is imposed on one of the parties to a lease . imposed by operation of law.  The location of the burden and bene obligation after a transfer of an interest in the leased property what is appropriate to further the purposes of imposing the oblig

Restatement (Second) of Property §16.3(2) (1977).  Congress and this court

the "purposes of imposing" the PMPA's obligations: protecting the reasonabl

of franchisees while allowing franchisors to exercise their business judgme

830 F.2d at 478.

Consequently, like any other purchaser of land in Pennsylvania, L

had a duty to inquire into the rights of the party in possession of the pre

charged with constructive and actual notice of those rights; and (3) took s

rights, whether those rights arose by express or implied promise or by oper

Put differently, Lancaster is in privity of estate with the Patels and took

_____

[0]Interestingly, in <u>Atlantic Refining</u> the Pennsylvania Supreme Court also hel tenant who occupies a portion of a larger parcel and possesses a right of f to the "demised premises" may exercise his right to purchase only the demis The tenant's right does not entitle it to purchase the entire parcel.  <u>Atla</u> 51 A.2d at 722-23.

those obligations previously held by Sun which touch and concern the proper suggestion that Lancaster is required to perform any functions as a franchi petroleum products.

This conclusion is not inconsistent with Congressional intent. " legislative history of the PMPA indicates that in an extraordinary situatio of premises used in a franchise operation may owe certain duties to the fra though the landlord is not a franchisor." Bsales v. Texaco, Inc., 516 F.Su (D.N.J. 1981).

Lancaster thus has purchased the property subject to Sun's duty n or nonrenew the Patels' franchise, except upon various enumerated grounds. failing to extend the lease-back with Sun or offering a lease or sale direc Patels, however, Lancaster has caused the nonrenewal of the franchise. Lan not invoke the "relevant event" exception raised by Sun, as Lancaster retai grant possession to the premises. Nor could Lancaster rely on the "sale" e it can demonstrate that Sun made a bona fide offer to the Patels or Lancast a bona fide offer, then or now.

Such a resolution of plaintiffs' motion for preliminary injunctio with the Pennsylvania law of property as well as the PMPA's broad goals. D pendency of the litigation, Sun's sale of the property would be undisturbed would continue in business at the franchise location or purchase the proper and ultimately, Lancaster would either retain or receive fair market value property.

This holding would not prevent Lancaster from raising any statuto defense at trial. Lancaster would also be free to argue that it changed po

---

Even if Lancaster was not directly subject to the PMPA, it would nonetheles to the court's inherent equitable powers. I would deem it appropriate to e court's equitable jurisdiction over Lancaster under the extraordinary circu herein.

26

detriment if it reasonably relied on the rulings in the previous action. As noted, however, Lancaster purchased ten months before the first ruling in t action, and if it made any changes or improvements to the property, it did of the warnings in <u>Patel</u> II and III that upon nonrenewal the Patels could v PMPA rights.

## Conclusion

The PMPA permits a franchisor who owns a franchise location to se business reasons; the Act also protects the franchisee by affording it a co of first refusal, if the franchisor seeks to nonrenew the franchise based o Thus the franchisor may sell, but the franchisee may continue at the locati notwithstanding the sale if the franchisee elects to purchase. If the fran purchase, its franchise is subject to termination or non-renewal.

The franchisor is also permitted to end a franchise relationship event makes nonrenewal reasonable. Yet Congress intended that a franchisee' expectations be protected, and we must interpret the PMPA in light of this purpose. Hence, when a franchisor holds title to the franchise location at commencement of the franchise relationship, sells the premises to a party w refiner or distributor of motor fuel without offering it to the franchisee intention of later non-renewing the franchise, then there are fair grounds whether or not such events satisfy the "reasonableness" standard of the rel exception.

As the district court concluded in the previous litigation, howev language of the Act does indicate that a franchisee may not be able to vind rights until actual termination or nonrenewal has occurred. <u>See</u> §§2805(b)( Thus, even if a franchisee learns the franchisor is attempting to sell or h

franchise location without offering it to the franchisee, the franchisee ma

entitled to judicial relief until actual termination or nonrenewal takes pl

time for such relief has now arrived.

As a purchaser Lancaster is subject to the same obligations in re

property only as the seller Sun. Lancaster was under a duty of inquiry, is

constructive and actual notice of the rights of the parties in possession,

subject to the contractual and statutory rights of those parties.  The majo

however, allows a franchisor to extinguish a franchisee's rights by selling

renewing later.  This outcome protects the franchisor's right to sell, but

franchisee's right to continue in business at the franchise location.

A franchisor should not be able to avoid the prohibition on nonre

establishing a sale in good faith and postponing the termination or non-ren

date beyond the closing.  A purchaser who participates in such a transactio

to the rights of the franchisee.  The PMPA was designed to protect franchis

invested time and money in developing a business at a specific location.  A

should not be permitted to circumvent the statute and its policies by volun

unilaterally altering the franchise relationship and subjecting the franchi

earlier termination or nonrenewal on grounds for which the franchisor did n

the franchisee did not anticipate, and which deprive the franchisee of the

which the statute was intended to provide.

For the foregoing reasons I would reverse the order of the distri

remand with the direction that if the district court were to find that neit

Lancaster made a bona fide offer to the Patels and the balance of hardships

of plaintiffs, then a preliminary injunction be entered consistent with thi

such terms and conditions as the district court would deem appropriate.  Ho

event of such findings, such order should preliminarily enjoin defendants f

terminating or non-renewing plaintiffs' lease and franchise on the grounds

28

underlying lease between Sun and Lancaster expired in 1994; or (2) terminat

renewing plaintiffs' lease and franchise on the grounds that the property w

1987.